**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KATHERINE CUTRONE, MARY ELLEN MORGAN, MICHAEL W. SMUTZ, STAN G. SMITH, MARY BETH AM RHEIN, VALERIE REINECKE and EDDIE D. YOUSIF, on Behalf of Themselves and All Others Similarly Situated, | ) ) ) ) ) ) ) | |
| | ) | **CIVIL ACTION** |
| | ) | |
| Plaintiff, | ) | No. 1:20-cv-06463 |
| v. | ) | |
| | ) | |
| THE ALLSTATE CORPORATION; THE ALLSTATE 401(K) COMMITTEE; THE ALLSTATE 401(K) ADMINISTRATIVE COMMITTEE; THE ALLSTATE 401(K) INVESTMENT COMMITTEE; AND DOES 1-30, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' AMENDED CONSOLIDATED COMPLAINT**

## TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     LEGAL STANDARD .............................................................................................2

III.    ARGUMENT ..........................................................................................................2

        A.      Plaintiffs Are Not Required to Administratively Exhaust Their Claims ................2

        B.      Plaintiffs Have Not "Engag[ed] in Impermissible Collective Pleading"................4

        C.      Plaintiffs State a Claim of Fiduciary Breach Arising out of Excessive Fees...........6

        D.      Plaintiffs Have Properly Alleged Numerous Prohibited Transaction Claims ........9

        E.      Plaintiffs Have Standing to Seek Relief Concerning the Entire Suite of Target
                Date Funds—Not Just the Vintages Owned by Plaintiffs.....................................12

        F.      Counts II and III are Not Subject to Dismissal for Lack of Standing...................15

        G.      Former Participants in ERISA-Covered Retirement Plans Have Standing to Sue
                for Injuries to Themselves and to the Plan..........................................................15

        H.      Leave to Amend Should Be Granted to Cure Any Alleged Infirmities Here ........17

IV.     CONCLUSION .....................................................................................................17

## TABLE OF AUTHORITIES

CASES                                                                                   PAGE(S)

*Abrams v. Baker Hughes Inc.*,
   292 F.3d 424 (5th Cir. 2002) ...........................................................................................7

*Allen v. GreatBanc Tr. Co.*,
   835 F.3d 670 (7th Cir. 2016) ...............................................................................2, 4, 7

*Baker v. Kingsley*,
   2007 WL 1597654 (N.D. Ill. May 31, 2007) ...............................................................16

*Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*,
   377 F.3d 682 (7th Cir. 2004) ......................................................................................17

*Bartz v. Carter*,
   709 F. Supp. 827 (N.D. Ill. 1989) ............................................................................3, 4

*Bingham v. CNA Fin. Corp.*,
   2004 WL 2390093 (N.D. Ill. Oct. 25, 2004)................................................................3

*Boley v. Universal Health Servs., Inc.*,
   2020 WL 6381395 (E.D. Pa. Oct. 30, 2020)..............................................................13

*Braden v. Wal-Mart Stores, Inc.*,
   588 F.3d 585 (8th Cir. 2009) ............................................................................ *passim*

*Brieger v. Tellabs, Inc.*,
   473 F. Supp. 2d 878 (N.D. Ill. 2007) ........................................................................16

*Briscoe v. Health Care Serv. Corp.*,
   281 F. Supp. 3d 725 (N.D. Ill. 2017) ..........................................................................2

*Brown-Davis v. Walgreen Co.*,
   2020 WL 8921399 (N.D. Ill. Mar. 16, 2020)...............................................................1

*Chao v. Linder*,
   2007 WL 1655254 (N.D. Ill. May 31, 2007) ...............................................................12

*Chendes v. Xerox HR Solutions, LLC*,
   2017 WL 4698970 (E.D. Mich. Oct. 19, 2017) .........................................................11

*Chesemore v. Alliance Holdings, Inc.*,
   886 F. Supp. 2d 1007 (W.D. Wis. 2012) ...................................................................12

*Clark v. Duke Univ.*,
   2018 WL 1801946 (M.D.N.C. Apr. 13, 2018) ..........................................................13

*Concha v. London*,
  62 F.3d 1493 (9th Cir. 1995) ................................................................5

*Cryer v. Franklin Templeton Res., Inc.*,
  2017 WL 4023149 (N.D. Cal. July 26, 2017) .........................................13

*Divane v. Northwestern University*,
  953 F.3d 980 (7th Cir. 2020) .............................................................11

*Dodd v. Pentair Pump Grp.*,
  2012 WL 1985701 (N.D. Ill. June 1, 2012) ............................................2

*Falberg v. Goldman Sachs Grp., Inc.*,
  2020 WL 3893285 (S.D.N.Y. July 9, 2020) ...........................................13

*Fallick v. Nationwide Mut. Ins. Co.*,
  162 F.3d 410 (6th Cir. 1998) ............................................................13

*Flanagan v. Allstate Insurance Co.*,
  213 F. Supp. 2d 862 (N.D. Ill. 2001) ..................................................16

*George v. Kraft Foods Glob., Inc.*,
  814 F. Supp. 2d 832 (N.D. Ill. 2011) ....................................................1

*George v. Kraft Foods Global, Inc.*,
  641 F.3d 786 (7th Cir. 2011) ...........................................................6, 8

*Gompper v. VISX, Inc.*,
  298 F.3d 893 (9th Cir. 2002) .............................................................7

*Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*,
  530 U.S. 238 (2000) .......................................................................9

*Humana Health Plan, Inc. v. Nguyen*,
  785 F.3d 1023 (5th Cir. 2015) ...........................................................4

*In re AEP ERISA Litig.*,
  327 F. Supp. 2d 812 (S.D. Ohio 2004) ................................................4

*In re Cardinal Health, Inc. ERISA Litig.*,
  424 F. Supp. 2d 1002 (S.D. Ohio 2006) ..............................................6

*In re CMS Energy ERISA Litig.*,
  312 F.Supp.2d 898 (E.D. Mich. 2004) ................................................6

*In re Elec. Data Sys. Corp. ERISA Litig.*,
  305 F.Supp.2d 658 (E.D. Tex. 2004) ...............................................5, 6

*In re Steven Robert Lisse*,
    905 F.3d 495 (7th Cir. 2018) ....................................................................10

*Jakubiec v. Inland Material Handling Inc. Emp. Ben. Plan*,
    2002 WL 1759832 (N.D. Ill. July 30, 2002)...............................................4

*Johnson v. Martin*,
    943 F.2d 15 (7th Cir. 1991) ........................................................................2

*Korchek v. Nichols-Homeshield, Inc.*,
    1997 WL 619869 (N.D. Ill. Sept. 30, 1997) ...............................................3

*Kross v. W. Elec. Co.*,
    534 F. Supp. 251 (N.D. Ill. 1982), (7th Cir. 1983) ....................................3

*Krueger v. Ameriprise Fin., Inc.*,
    304 F.R.D. 559 (D. Minn. 2014)................................................................14

*Leigh v. Engle*,
    727 F.2d 113 (7th Cir. 1984) ......................................................................9

*Lowen v. Tower Asset Mgmt., Inc.*,
    829 F.2d 1209 (2d Cir. 1987)......................................................................9

*Mach. Movers, Riggers & Mach. Erectors, Loc. 136 v. Nationwide Life Ins. Co.*,
    2006 WL 2927607 (N.D. Ill. Oct. 10, 2006)............................................12

*McDonald v. Jones*,
    2017 WL 372101 (E.D. Mo. Jan. 26, 2017) .............................................13

*Mehta v. Beaconridge Improvement Ass'n*,
    432 F. App'x 614 (7th Cir. 2011) ...............................................................2

*Nat'l Sec. Sys., Inc. v. Iola*,
    700 F.3d 65 (3d Cir. 2012).........................................................................12

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
    693 F.3d 145 (2d Cir. 2012)...............................................................14, 15

*Neil v. Zell*,
    767 F. Supp. 2d 933 (N.D. Ill. 2011) .......................................................13

*Orr v. v. Assurant Employee Benefits*,
    786 F.3d 596 (7th Cir. 2015) ......................................................................3

*Panaras v. Liquid Carbonic Industries Corp.*,
    74 F.3d 786 (7th Cir. 1996) ......................................................................16

*Pizarro v. Home Depot, Inc.*,
   2019 WL 11288656 (N.D. Ga. Sept. 20, 2019) ...................................................................7, 8

*Plumbers & Pipefitters Nat. Pension Fund v. Burns*,
   967 F. Supp. 2d 1143 (N.D. Ohio 2013)...............................................................................14, 15

*Powell v. A.T. & T. Commc'ns, Inc.*,
   938 F.2d 823 (7th Cir. 1991) ........................................................................................................3

*Scott v. Aon Hewitt Fin., Advisors, LLC*,
   2018 WL 1384300 (N.D. Ill. Mar. 19, 2018).........................................................................8, 11

*Smith v. Aon Corp.*,
   238 F.R.D. 609 (N.D. Ill. 2006).................................................................................................16

*Spano v. Boeing Co.*,
   2007 WL 1149192 (S.D. Ill. Apr. 18, 2007)......................................................................2, 7, 8

*Spear v. Fenkell*,
   2016 WL 5661720 (E.D. Pa. Sept. 30, 2016) ............................................................................12

*Spiegel v. Kim*,
   952 F.3d 844 (7th Cir. Mar. 6, 2020)........................................................................................10

*Sroga v. Laboda*,
   748 F. App'x. 77 (7th Cir. 2019) ...............................................................................................10

*Swierkiewicz v. Sorema N. A..*,
   534 U.S. 506 (2002).....................................................................................................................4

*Talamine v. Unum Life Ins. Co. of Am.*,
   803 F. Supp. 198 (N.D. Ill. 1992) ...............................................................................................3

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007).....................................................................................................................7

*Terraza v. Safeway Inc.*,
   241 F. Supp. 3d 1057 (N.D. Cal. 2017) ......................................................................................8

*Tibble v. Edison Int'l*,
   843 F.3d 1187 (9th Cir. 2016) .....................................................................................................8

*Tussey v. ABB, Inc.*,
   2007 WL 4289694 (W.D. Mo. Dec. 3, 2007)...........................................................................13

*Vanderwiel v. Schawk USA, Inc.*,
   2012 WL 4932658 (N.D. Ill. Oct. 16, 2012)...............................................................................3

*Waldron v. Dugan,*
2007 WL 4365358 (N.D. Ill. Dec. 13, 2007) ...................................................................3

*Walker v. Thompson,*
288 F.3d 1005 (7th Cir. 2002) .................................................................................2, 3

*Walsh v. Marsh & McLennan Cos., Inc.,*
2006 WL 734899 (D. Md. Feb. 27, 2006) .............................................................13

*Weiler v. Lapkoff,*
2002 WL 31749199 (N.D. Ill. Dec. 6, 2002) ........................................................3

*Zhou v. Guardian Life Ins. Co. of Am.,*
295 F.3d 677 (7th Cir. 2002) ....................................................................................3


**STATUTES**                                                                 **PAGE(S)**

29 U.S.C. § 1104 ............................................................................................7, 9, 11

29 U.S.C. § 1105 ..................................................................................................10

29 U.S.C. § 1132 ............................................................................................13, 16

29 U.S.C. § 1106 ....................................................................................9, 10, 11, 12

Unif. Prudent Investor Act § 7 .........................................................................8


**REGULATIONS**                                                              **PAGE(S)**

29 CFR § 2550.408b-2 ................................................................................10, 11, 12

29 CFR § 4065.3 ...........................................................................................10, 12


**RULES**                                                                    **PAGE(S)**

Fed. R. Civ. P. 12(b)(6) .......................................................................................2, 6

Fed. R. Evid. 201(b) ...........................................................................................10

**OTHER AUTHORITIES**                                                     **PAGE(S)**

Dept. of Labor, Reasonable Contract or Arrangement Under Section 408(b)(2)—Fee Disclosure, 77 FR 5632-01 ...............................................................................................................11

Dept. of Labor, Field Assistance Bulletin No. 2007-01 ...............................................................8

Dept. of the Treasury, Dept. of Labor, Pension Benefit Guaranty Corp., "Instructions for Form 5500".............................................................................................................................10

Restatement (Third) of Trusts § 88...............................................................................................8

## I.      **INTRODUCTION**

ERISA imposes strict duties on retirement plan fiduciaries that "are the highest known to law." *George v. Kraft Foods Glob., Inc.*, 814 F. Supp. 2d 832, 852 (N.D. Ill. 2011). Defendants, as fiduciaries to the Plan, persistently breached these duties by loading the Plan with a suite of poorly performing target date funds from Northern Trust and burdening the Plan with excessive fees charged by "robo-advisers" Financial Engines and Alight Financial Advisors. Defendants also violated ERISA's categorical bar on prohibited transactions by, *inter alia*, turning a blind eye to a kickback scheme between Financial Engines and the Plan's recordkeeper, Aon Hewitt.

As a remedial statute, ERISA is liberally construed in favor of plan participants. Against this backdrop, there is an extensive body of cases establishing ERISA's liberal pleading regime, which recognizes that ERISA plaintiffs rarely have access pre-suit to the details of defendants' fiduciary processes, requires that claims be viewed in their totality rather than parsed in isolation, and broadly confers standing on current and former participants in ERISA-covered plans to bring fiduciary duty claims on behalf of the plan, without any requirement of administrative exhaustion.

Defendants' Motion largely ignores this settled body of ERISA case law and, instead, advances a host of arguments that courts (including this one) have repeatedly rejected in analogous cases.  Indeed, in a case that Defendants' Motion calls "nearly-identical" to this one (Mot. at 12), this Court rejected many of the arguments Defendants advance here.  *See Brown-Davis v. Walgreen Co.*, 2020 WL 8921399, at *1 (N.D. Ill. Mar. 16, 2020) (denying in part motion to dismiss in ERISA breach of fiduciary duty class action concerning the same Northern Trust Funds at issue in this case).  Further, Defendants' Motion is replete with narrow arguments that, at most, attempt to chip away at the margins of Plaintiffs' claims and do not provide a basis for wholesale dismissal of this case.  Defendants' Motion should be denied in its entirety.

## II.   LEGAL STANDARD

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the test is not whether the plaintiff will ultimately prevail, but rather whether the pleading is sufficient to cross [a] minimal threshold" indicating that the plaintiff is entitled to relief. *Mehta v. Beaconridge Improvement Ass'n*, 432 F. App'x 614, 616 (7th Cir. 2011). To cross this "minimal threshold," a plaintiff is merely required to provide "enough details about the subject matter of the case to present a story that holds together." *Id.*   To survive a motion to dismiss, "it is enough to provide the context necessary to show a plausible claim for relief." *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 674 (7th Cir. 2016).   In that regard, this Court "accepts all well-pleaded allegations as true and draws all reasonable inferences in [p]laintiffs' favor." *Briscoe v. Health Care Serv. Corp.*, 281 F. Supp. 3d 725, 730 (N.D. Ill. 2017). "A complaint should not be dismissed under Rule 12(b)(6) 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Spano v. Boeing Co.*, 2007 WL 1149192, at *1 (S.D. Ill. Apr. 18, 2007) (quoting *Johnson v. Martin*, 943 F.2d 15, 16 (7th Cir. 1991)).

## III.   ARGUMENT

### A.   Plaintiffs Are Not Required to Administratively Exhaust Their Claims

Defendants' argument that this entire case should be dismissed for ostensible failure to exhaust available administrative remedies contravenes settled authority and should be rejected.

First, this argument is procedurally improper because administrative exhaustion is an affirmative defense, not a cognizable basis for dismissal pursuant to Fed. R. Civ. P. 12(b)(6).  *See, e.g.*, *Dodd v. Pentair Pump Grp.*, 2012 WL 1985701, at *2 (N.D. Ill. June 1, 2012) (denying motion to dismiss for failure to exhaust, finding "'[f]ailure to exhaust administrative remedies is an affirmative defense'" and thus "premature") (quoting *Walker v. Thompson*, 288 F.3d 1005, 1009

(7th Cir. 2002)); *Waldron v. Dugan*, 2007 WL 4365358, at *4-5 (N.D. Ill. Dec. 13, 2007) ("Failure to exhaust plan remedies is a non-jurisdictional affirmative defense to an ERISA action. Complaints may not be dismissed for failing to rebut affirmative defenses").[1]

Second, as courts have repeatedly held, administrative exhaustion is not required where, as here, plaintiffs bring ERISA breach of fiduciary duty claims, seeking plan-wide relief. *See, e.g.*, *Kross v. W. Elec. Co.*, 534 F. Supp. 251, 253 (N.D. Ill. 1982), *aff'd in part, rev'd in part on other grounds,* 701 F.2d 1238 (7th Cir. 1983) ("exhaustion is not required in civil actions for breach of fiduciary duty brought under [ERISA] Section 502(a)(2)"); *Weiler v. Lapkoff*, 2002 WL 31749199, at *4 (N.D. Ill. Dec. 6, 2002) ("contrary to [d]efendants' argument, [p]laintiffs need not have exhausted their administrative remedies to bring suit as plan participants because they have alleged a breach of fiduciary duty . . ."); *Korchek v. Nichols-Homeshield, Inc.*, 1997 WL 619869, at *6 (N.D. Ill. Sept. 30, 1997) (noting that courts in this district "have generally not required exhaustion" for claims that "speak in breach of fiduciary duty rather than denial of benefits").[2]

Third, any purported failure to exhaust is excused because resort to administrative remedies under the instant circumstances would be futile. Plaintiffs are not merely seeking damages and equitable relief with regard to their individual accounts, but Plan-wide relief. *See Bartz v. Carter*, 709 F. Supp. 827, 828 (N.D. Ill. 1989) (excusing exhaustion for fiduciary duty breach claims, where it "would be futile, create needless delay, and would not fulfil the policies underlying

---

[1]  Underscoring the prematurity of their argument, Defendants' cited case of *Orr v. v. Assurant Employee Benefits*, 786 F.3d 596, 600 (7th Cir. 2015), was decided on summary judgment, not on a motion to dismiss.
[2] Defendants' cited cases primarily involve administrative exhaustion for individual denial of benefit claims, not fiduciary duty breach claims. *See Zhou v. Guardian Life Ins. Co. of Am.*, 295 F.3d 677, 678 (7th Cir. 2002) (individual suit for insurance company's denial of payment for medical claims); *Powell v. A.T. & T. Commc'ns, Inc.*, 938 F.2d 823, 824 (7th Cir. 1991) (individual suit for wrongful termination to avoid paying benefits); *Vanderwiel v. Schawk USA, Inc.*, 2012 WL 4932658, at *1 (N.D. Ill. Oct. 16, 2012) (individual suit for denial of severance pay); *Bingham v. CNA Fin. Corp.*, 2004 WL 2390093, at *2 (N.D. Ill. Oct. 25, 2004) (individual suit for denial of benefits); *Talamine v. Unum Life Ins. Co. of Am.*, 803 F. Supp. 198, 201 (N.D. Ill. 1992) (individual suit for termination of disability benefits).

exhaustion."[3] Thus, the exhaustion argument should be rejected.

**B.     Plaintiffs Have Not "Engag[ed] in Impermissible Collective Pleading"**

While Defendants fault Plaintiffs for purportedly not specifying the actions taken by each

Allstate Defendant (Mot. at 8-10)—which Defendants mischaracterize as "collective pleading"—

Plaintiffs have fully complied with the pleading rules applicable to ERISA, which are unique

among federal statutes in their flexibility.[4]  Defendants' Motion on this score should be denied.

Extensive appellate authority (including from the Seventh Circuit) holds that under

ERISA's liberal pleading standard, plan participants are not required to detail each defendant's

specific conduct in order to state a claim for breach of fiduciary duty. *See Allen*, 835 F.3d at 678

(holding that ERISA plaintiffs are not required to describe directly the ways the fiduciaries'

process was flawed, "[i]t [is] enough to allege facts from which a factfinder could infer that the

process was inadequate" because "ERISA plaintiffs generally lack the inside information

necessary to make out their claims in detail unless and until discovery commences," and "an

ERISA plaintiff alleging breach of fiduciary duty does not need to plead details to which she has

no access, as long as the facts alleged tell a plausible story."); *Braden v. Wal-Mart Stores, Inc.*,

588 F.3d 585, 595 (8th Cir. 2009) (reversing district court's dismissal of ERISA action against

---

[3] Defendants' demand for administrative review is inconsistent with their contention that the 401(k) Administrative Committee "had no authority over complained of acts." (Mot. at 9.) Initiating administrative proceedings with administrators who purportedly lack the authority to grant the requested relief is the definition of futility and "illustrates the wisdom of the rule against requiring plaintiffs to exhaust claims for breach of fiduciary duty." *Bartz*, 709 F. Supp. at 828.

[4] *See Humana Health Plan, Inc. v. Nguyen*, 785 F.3d 1023, 1033 (5th Cir. 2015) ("Several decades of evolving ERISA jurisprudence demonstrate . . . [that] ERISA fiduciaries and their duties have become *sui generis*" in American law); *Jakubiec v. Inland Material Handling Inc. Emp. Ben. Plan*, 2002 WL 1759832, at *2 (N.D. Ill. July 30, 2002) (denying motion to dismiss in view of ERISA's "liberal pleading standard" for fiduciary breach claims); *In re AEP ERISA Litig.*, 327 F. Supp. 2d 812, 822 (S.D. Ohio 2004) ("[T]his Court can discern no reason why, generally, ERISA plaintiffs should have to meet heightened pleading requirements, as opposed to the 'simplified notice pleading standard [that] relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.'") (quoting S*wierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002)).

group of retirement plan fiduciaries, and holding it is a "mistaken assumption" that a plaintiff is "required to describe directly the ways in which [defendants] breached their fiduciary duties," it is "error" to "fault[] the complaint for making 'no allegations regarding the fiduciaries' conduct,'" and "it is sufficient for a plaintiff to plead facts indirectly showing unlawful behavior, so long as the facts pled 'give the defendant fair notice of what the claim is and the grounds upon which it rests,' . . . and 'allow [ ] the court to draw the reasonable inference' that the plaintiff is entitled to relief."); *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995) ("[T]he circumstances surrounding alleged breaches of fiduciary duty may frequently defy particularized identification at the pleading stage. . . . These facts will frequently be in the exclusive possession of the breaching fiduciary.").

Here, Plaintiffs make allegations concerning each Defendant and the breaches of fiduciary duty that each is alleged to have committed. The Complaint contains particularized allegations for each Defendant identifying its responsibilities with respect to the Plan and its role as a fiduciary. (Plaintiffs' Consolidated Complaint ("CC") ¶¶ 23-26, 38.) While the details of Defendants' decision-making processes with respect to the Plan are solely in their possession, even so Plaintiffs have alleged that Defendants violated ERISA by: "load[ing] the Plan with a suite of poorly performing funds"; "ke[eping] these Funds [in the Plan] throughout the Class Period despite their continued underperformance"; "select[ing] the Northern Trust Funds as the Plan's default investment option" despite the continued underperformance of those funds; and "allow[ing] participants to pay unreasonably high fees to the Plan's 'investment advisers.'" (CC ¶¶ 3, 8, 13.) These allegations, which must be accepted as true in deciding the Motion, provide ample support for Plaintiffs' claims, and Defendants' resort to materials outside the pleadings should be rejected.[5]

---

[5] The Court should not take notice of Defendants' proffered Plan documents in support of Defendants' argument that certain Defendants are not ERISA fiduciaries. A defendant's ERISA fiduciary status is a fact-intensive issue that is not appropriately resolved on a motion to dismiss. *See, e.g., In re Elec. Data Sys.*

### C.     <u>Plaintiffs State a Claim of Fiduciary Breach Arising out of Excessive Fees</u>

To sustain a claim for breach of fiduciary duty under ERISA, Plaintiffs must allege facts "showing that the defendant acted as a fiduciary, breached its fiduciary duties, and thereby caused a loss to the Plan." *Braden*, 588 F.3d at 594. In Count II, Plaintiffs allege that Defendants breached their fiduciary duty of prudence by failing "to engage in a prudent process for retaining an investment adviser" for the Plan, which caused Plan participants to pay excessive fees. (CC ¶¶ 177-78.) As support, Plaintiffs include multiple factual allegations which, taken either singularly or in combination, give rise to the plausible inference that Defendants "did not satisfy their duty to ensure that [Financial Engines' and Alight Financial Advisors'] fees were reasonable." *George v. Kraft Foods Global, Inc*., 641 F.3d 786, 800 (7th Cir. 2011); *see also, e.g.*, *Braden*, 588 F.3d at 590 (reversing dismissal where complaint alleged ERISA fiduciaries' "process by which mutual funds were selected was tainted by [fiduciaries'] failure to consider [trustee's] interest in including funds that shared their fees with the trustee."); CC ¶¶ 125-155, 177-185 (detailing imprudence).

Notably, Defendants do not dispute that Plaintiffs have properly alleged a claim for breach of fiduciary duty in Count II. Instead, Defendants ask the Court to dismiss just one subset of Plaintiffs' breach of fiduciary duty claim—the allegation concerning fees for Online Advice, which is the ability to access online recommendations generated by robo-advisor Financial Engines. Mot. at 10. But in determining whether Plaintiffs state a claim under Fed. R. Civ. P. 12(b)(6), the complaint must be viewed in totality, "not parsed piece by piece to determine whether

---

*Corp. ERISA Litig.,* 305 F.Supp.2d 658, 665 (E.D. Tex. 2004) ("It is typically premature to determine a defendant's fiduciary status at the motion to dismiss stage . . . courts will typically have insufficient facts at the motion to dismiss stage from which to make the law/fact analysis necessary to determine functional or named fiduciary status."); *In re CMS Energy ERISA Litig.,* 312 F.Supp.2d 898, 907–09 (E.D. Mich. 2004) (holding fiduciary status could not be determined on a motion to dismiss); *In re Cardinal Health, Inc. ERISA Litig.*, 424 F. Supp. 2d 1002, 1030 (S.D. Ohio 2006) ("fiduciary status is a 'fact-intensive inquiry, making the resolution of that issue inappropriate for a motion to dismiss.'") (citation omitted).

each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594.[6]  *See Pizarro v. Home Depot, Inc.*, 2019 WL 11288656, at *4-5 (N.D. Ga. Sept. 20, 2019) (rejecting challenge to single allegation in § 1104 claim: "Plaintiffs do not rely solely upon the allegation of cheaper investment options to show that [defendants'] decision-making process was imprudent. . . Taking into consideration all of the circumstantial factual allegations surrounding [defendants'] retention of FEA and AFA as the investment advisors, the Court finds that Plaintiffs have alleged sufficient facts to support an inference of an imprudent decision-making process."). Defendants' argument is improper and should be denied.

In any event, Plaintiffs have alleged sufficient facts regarding the Online Advice program "to provide the context necessary to show a plausible claim for relief" under 29 U.S.C. § 1104. *Allen*, 835 F.3d at 674. First, while Defendants claim that Plaintiffs fail to allege "what services were provided" (Mot. at 10), in fact Plaintiffs include detailed allegations about the services provided under the Online Advice program. (*See* CC ¶¶ 125, 139-140.)  Second, while Defendants fault Plaintiffs for not listing the exact fee charged for Online Advice (Mot. at 10), Plaintiffs are not required to allege the specific fees charged—especially because Defendants themselves concealed the fees for the Online Advice program. (*See* CC ¶ 125.)  Employees suing their employers under ERISA "generally lack the inside information necessary to make out their claims in detail"; thus "an ERISA plaintiff alleging breach of fiduciary duty does not need to plead details to which she has no access, as long as the facts alleged tell a plausible story." *Allen*, 835 F.3d at 678; *Braden*, 588 F.3d at 602 (finding it would be "perverse" to require plaintiffs "to plead facts that remain in the sole control of the parties who stand accused of wrongdoing"); *Spano*, 2007 WL

---

[6] *See also, e.g.*, *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322–23 (2007); *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 431 (5th Cir. 2002); *Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002).

7

1149192, at *1 (given the "liberal pleading system that requires only notice pleading, a 'complaint's mere vagueness or lack of detail is not sufficient to justify a dismissal.'").

In any event, unlike in *Scott v. Aon Hewitt Fin., Advisors, LLC*, on which Defendants rely, Plaintiffs have alleged more than sufficient "other facts to support the 'excessive' aspect" of the Online Advice fee. 2018 WL 1384300, at *11 (N.D. Ill. Mar. 19, 2018). Specifically, Plaintiffs allege that *all* Plan participants were required to pay for the Online Advice program *even if they did not use it*. (CC ¶¶ 125, 140-41, 181.) Plaintiffs further allege that Defendants allowed Financial Engines and Alight Financial Advisors ("AFA") to collect fees from *all* participants without considering how many Plan participants actually use Online Advice. *Id.* ¶ 181.[7] Thus, many Plan participants were required to pay Financial Engines a portion of their retirement savings even though they received *no* benefit from the Online Advice program. It is axiomatic that "'[w]asting beneficiaries' money is imprudent," and Plaintiffs allege that Defendants did just that by mandating that *all* participants pay for the Online Advice tool as an "administrative expense" of the Plan. *See* Unif. Prudent Investor Act § 7; *accord George v. Kraft Foods Glob., Inc*., 641 F.3d 786, 789 (7th Cir. 2011) ("plan administrative costs must be 'reasonable.'"); *Tibble v. Edison Int'l*, 843 F.3d 1187, 1198 (9th Cir. 2016) (implicit in Defendants' "fiduciary duties is a duty to be cost-conscious.") (quoting Restatement (Third) of Trusts § 88 cmt. A). Accepting these facts as true and drawing all reasonable inferences in Plaintiffs' favor, the Court has ample basis to "reasonably infer" that the fiduciaries' decision-making process was flawed here. *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1070 (N.D. Cal. 2017); *Pizarro*, 2019 WL 11288656, at *5.

---

[7] Defendants fell short of Department of Labor guidelines that in selecting plan service providers, "a fiduciary should engage in an objective process that is designed to elicit information necessary to assess the . . . reasonableness of fees charged for the service" and that takes into account "utilization of the investment advice services by the participants in relation to the cost of the services." DOL FAB No. 2007-01.

**D.     Plaintiffs Have Properly Alleged Numerous Prohibited Transaction Claims**

In addition to imposing a general duty of prudence under 29 U.S.C. § 1104, ERISA "categorically bar[s] certain transactions deemed likely to injure the pension plan" under § 1106. *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 242 (2000) (citation omitted). Specifically, § 1106 bars any ERISA fiduciary from causing the plan to engage in any transactions that inure to the benefit of a party-in-interest or fiduciary of the plan rather than benefitting the plan itself. The restrictions set forth in § 1106 "protect[] beneficiaries by prohibiting transactions tainted by a conflict of interest and thus highly susceptible to self-dealing" and should "be broadly construed" in their application. *Lowen v. Tower Asset Mgmt., Inc*., 829 F.2d 1209, 1213 (2d Cir. 1987) (citing *Leigh v. Engle*, 727 F.2d 113, 126 (7th Cir. 1984)).

As detailed below, Plaintiffs allege two separate categories of prohibited transactions arising from the Plan's arrangements with two parties in interest, Financial Engines and AFA. Defendants' bid for dismissal is based on the limited and erroneous argument that the transactions at issue did not involve "plan assets." But this argument is irrelevant to most of the prohibited transactions that Plaintiffs allege and is belied by Defendants' own admissions to the government.

First, Plaintiffs allege that Defendants violated § 1106(a)(1)(A), (C) and (D) by causing the Plan to hire and pay unreasonable compensation to Financial Engines and AFA. (CC ¶¶ 188-190.) Defendants do not dispute that Plaintiffs have adequately pled these claims. Subject to limited exceptions, § 1106(a)(1) prohibits a fiduciary from causing a plan to engage in a transaction that constitutes an indirect: (A) sale or exchange of property between the plan and a party in interest, (C) furnishing of services between the plan and a party in interest, or (D) transfer or use of any assets of the plan by, or for the benefit of, any party in interest. This set of undisputed claims is separate from Plaintiffs' § 1106 claims arising from the kickback scheme discussed below.

9

Second, Plaintiffs allege a kickback scheme between Financial Engines and the Plan's recordkeeper, Hewitt, that violated § 1106(a)(1)(D) and § 1106(b)(1) and (3) in which Financial Engines passed through to Hewitt a portion of the investment advisory fees it received from the Plan in exchange for Hewitt's agreement to feature Financial Engines exclusively to its retirement plan clients. (CC ¶¶ 145, 191-92.) Plaintiffs further allege that Defendants are equally liable under § 1105(a)(3) because they knowingly turned a blind eye to this prohibited transaction. *Id*. ¶ 192. Defendants' sole challenge to this set of prohibited transaction claims is the assertion that Financial Engines was not transferring "plan assets" when it remitted a designated portion of the fees taken directly from participants' accounts. Mot. at 11. But Defendants' argument is contrary to their own admissions in public filings—in which Defendants acknowledged that the payments remitted from Financial Engines to Hewitt involved assets of the Plan. Specifically, Allstate reported in its Form 5500s filed with the Department of Labor—of which the Court may take judicial notice[8]—that the challenged pass-through arrangement constituted "indirect compensation from the plan" to Hewitt "received in connection with services rendered to the plan. . . or [Hewitt's] position with the plan."[9] Dept. of the Treasury, Dept. of Labor, Pension Benefit Guaranty Corp., "Instructions for Form 5500" at 24-25; *accord* 29 CFR § 4065.3.[10] The robust regulatory framework promulgated by the Department of Labor underscores that these arrangements involve plan assets.[11]

---

[8] *See Spiegel v. Kim*, 952 F.3d 844, 847 (7th Cir. 2020) ("court may take judicial notice of public records"); *Sroga v. Laboda*, 748 F. App'x. 77, 78 n.1 (7th Cir. 2019) (court may take "judicial notice of an adjudicative fact if it can be readily determined from sources whose accuracy cannot reasonably be questioned.") (citing Fed. R. Evid. 201(b)); *In re Steven Robert Lisse*, 905 F.3d 495, 496-97 (7th Cir. 2018).

[9] *See* CC ¶ 145 (alleging Defendants reported the indirect compensation on its Form 5500); the Plan's Form 5500s for 2014 through 2017 (reporting indirect compensation) are publicly available through the DOL's EFast Filing Search, *available at* https://www.efast.dol.gov/portal/app/disseminatePublic?execution=e1s5

[10] *Available at* https://www.dol.gov/sites/dolgov/files/EBSA/employers-and-advisers/plan-administration-and-compliance/reporting-and-filing/form-5500/2020-instructions.pdf

[11] The Department of Labor spent years developing a robust regulatory framework that recognizes the acute risk for conflicts of interests among service providers, in particular with regard to the indirect compensation arrangements among service providers. This end result of intense effort is codified at 29 CFR 2550.408b-

None of the cases cited by Defendants warrant dismissal here. None are binding authority on this Court, none of them involve party admissions made on a Form 5500, and none discuss the Department of Labor regulatory framework that governs. For instance, in *Scott v. Aon Hewitt Financial, Advisors, LLC*, 2018 WL 1384300, at *10 (N.D. Ill. Mar. 19, 2018), the district court dismissed a § 1106(a)(1)(C) claim, without prejudice and with leave to amend, because the plaintiff cited no authority for when plan assets paid to a service provider "would cease to be plan assets." *Id*. (quoting *Chendes v. Xerox HR Solutions, LLC*, 2017 WL 4698970, at *9 (E.D. Mich. Oct. 19, 2017)). Defendants' reliance on *Divane v. Northwestern University*, 953 F.3d 980 (7th Cir. 2020), is likewise flawed, as the plaintiffs there failed to allege even "the basic elements" of a § 1106 claim and provided "no independent argument" in support of a prohibited transactions claim beyond the allegation that the recordkeeping fees were unreasonable. *Id*. at 992. Moreover, in *Divane*, unlike in this case, the fees collected by Hewitt were used to "defray reasonable expenses of administering the plan" and therefore provided a benefit to the plan. *Id*. at 988 (quoting § 1104(a)); here, by contrast, the fees collected by Hewitt were not returned to the Plan. (*See* CC ¶¶ 143-44.)

In any event, even if the Court were to find that the Financial Engines' pass-through of a portion of fees drawn directly from participants' accounts did not amount to a transfer of plan

---

2. *See* DOL, Reasonable Contract or Arrangement Under Section 408(b)(2)—Fee Disclosure, 77 FR 5632-01. In explaining the need for regulatory action, the DOL emphasized both the conflicted nature of these prohibited transactions among service providers, and the plan fiduciaries' duty to monitor these transactions closely, stating: "Payments from third parties *and among service providers* can create conflicts of interest between service providers and their clients. . . Such compensation arrangements and the conflicts they can create are myriad and in the past have been largely hidden from view. Their opacity has sometimes prevented plan fiduciaries from assessing the reasonableness of the costs for plan services and allowed harmful conflicts to persist in the market. In evaluating the reasonableness of contracts or arrangements for services, *responsible plan fiduciaries have a duty to consider compensation that will be received by a covered service provider from all sources in connection with the services it provides to a covered plan* pursuant to the service provider's contract or arrangement." *Id*., 77 FR at 5650 (emphasis added).

assets, this provides no basis to dismiss Plaintiffs' prohibited transaction claim under § 1106(b)(3). Section 1106(b)(3) prohibits the payment of *any consideration* to a fiduciary in connection to a transaction involving plan assets; it "does not limit the prohibited consideration to receipt of plan assets." *Spear v. Fenkell*, 2016 WL 5661720, *29 (E.D. Pa. Sept. 30, 2016); *Chesemore v. Alliance Holdings, Inc.*, 886 F. Supp. 2d 1007, 1056 (W.D. Wis. 2012) ("the source of the funds is irrelevant under [ERISA] § 406(b)(3)"); *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 94 (3d Cir. 2012) (noting that § 1106(b)(3) has a "flat prohibition on a fiduciary's receipt of consideration in connection with a transaction involving plan assets."); *Mach. Movers, Riggers & Mach. Erectors, Loc. 136 v. Nationwide Life Ins. Co.*, 2006 WL 2927607, at *1 (N.D. Ill. Oct. 10, 2006) (denying motion to dismiss where plaintiffs alleged third party plan administrator "received exorbitant fees and commissions" from non-fiduciary defendants); *Chao v. Linder*, 2007 WL 1655254, at *7-8 (N.D. Ill. May 31, 2007) (violation of § 1106(b)(3) based on receipt of a motorcycle). Thus, whether the transaction involved "Plan assets" is not a basis for dismissal under § 1106(b)(3).

In sum, as to the subset of Plaintiffs' prohibited transactions claims that Defendants actually challenge (CC ¶¶ 191-92), Plaintiffs have properly alleged claims under § 1106(b)(3) that do not require Plaintiffs to allege that Hewitt received "plan assets." For the portion of Plaintiffs' claims arising out of §1106(a)(1)(D) and § 1106(b)(1), which allege transfer or use of Plan assets, the Court may take judicial notice of Allstate's admissions that the challenged transactions involved Plan assets. Further, Department of Labor guidance and regulations (29 CFR § 2550.408b-2 (Rule 408(b)(2)), 29 CFR § 4065.3 (governing Form 5500s) and accompanying agency guidance) confirm that the challenged transactions did, in fact, involve Plan assets.

### E. Plaintiffs Have Standing to Seek Relief Concerning the Entire Suite of Target Date Funds—Not Just the Vintages Owned by Plaintiffs

Defendants assert that Plaintiffs lack standing to bring claims related to six vintages of

12

Northern Trust Funds that Plaintiffs did not own. Defendants' position is contrary to authority and the practical reality that all Northern Trust vintages were maintained in the Plan as a single suite.

The majority rule in the federal courts,[12] and the prevailing rule in this District, is that participants in defined-contribution retirement plans have standing to bring ERISA claims challenging investment funds included in their plans that they do not own personally at the time of suit because "if the plaintiffs win their case [in that event] by obtaining a money judgment against [defendants], the receipt of that money will constitute the receipt of a plan benefit." *Neil v. Zell*, 767 F. Supp. 2d 933, 950 (N.D. Ill. 2011) (holding former employees of ERISA plan sponsor and fiduciary defendant had standing to sue concerning investments the former employees personally no longer own); *see also Cryer v. Franklin Templeton Res., Inc.*, 2017 WL 4023149, at *4 (N.D. Cal. July 26, 2017) (holding plaintiff had standing to sue for funds in his plan "in which he did not invest" because "the lawsuit seeks to restore value to and is therefore brought on behalf of the [p]lan"). This rule exists because under ERISA a plaintiff who has established his own

---

[12] *See Falberg v. Goldman Sachs Grp., Inc.*, 2020 WL 3893285, at *8 (S.D.N.Y. July 9, 2020) (collecting cases, and stating, "the majority of courts considering similar cases" follow the rule that participants in defined-contribution retirement plans may have standing to bring ERISA claims challenging investments in which they did not personally invest); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) (finding that "[w]here, as here, the crux of an ERISA plaintiff's complaint concerns the methodology used to determine benefits, courts have recognized that the standing-related provisions of ERISA were not intended to limit a claimant's right to proceed under Rule 23 on behalf of all individuals affected by the challenged conduct, regardless of the representative's lack of participation in all the ERISA-governed plans involved."); *McDonald v. Jones*, 2017 WL 372101, at *2 (E.D. Mo. Jan. 26, 2017) ("a plan participant may seek recovery for the plan even where the participant did not personally invest in every one of the funds that caused an injury to the plan"); *Boley v. Universal Health Servs., Inc.*, 2020 WL 6381395, at *7 (E.D. Pa. Oct. 30, 2020) (finding plaintiffs had Article III standing for "claims based on the Fiduciaries' process applicable to all funds offered to them."); *Clark v. Duke Univ.*, 2018 WL 1801946, at *4 (M.D.N.C. Apr. 13, 2018) (finding that plaintiffs invested in 25 out of the 375 funds at issue had "Article III standing [and] may proceed under §1132(a)(2) on behalf of the plan or other participants even if the relief sought 'sweeps beyond his own injury.'"); *Tussey v. ABB, Inc*., 2007 WL 4289694, at *2 (W.D. Mo. Dec. 3, 2007) ("Defendants' argument that [plaintiff] cannot advance any claims for investment options which he never elected is not persuasive because the losses occurred to the Plan as a whole"); *Walsh v. Marsh & McLennan Cos., Inc*., 2006 WL 734899, at *1 (D. Md. Feb. 27, 2006) ("it does not matter, at least for the purpose of constitutional standing, that Walsh was not invested in the funds in which such trading practices occurred.")

standing may seek relief on behalf of a plan and its participants even if that relief "sweeps beyond his own injury." *Braden*, 588 F.3d at 593; *see also Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 567 n.6 (D. Minn. 2014) ("[W]hether [plaintiffs] can represent Plan participants whose claims are based on other injuries is a matter of class certification, *not standing*.") (emphasis added).

Defendants' insistence that, in order to have standing, Plaintiffs must have owned every single vintage of Northern Trust Funds included in the Plan is especially misguided because the Northern Trust Funds were packaged and selected for the Plan on an all-or-nothing basis, as a suite of funds. (*See* CC ¶¶ 4, 52.) Retirement plans generally cannot select different vintages of target date funds from different fund managers. Instead, Defendants selected the entire suite of Northern Trust Funds for the Plan as a *single* family of funds managed by a single team of fund managers pursuant to a common investment mandate and strategy, which resulted in the simultaneous inclusion of all vintages of the Northern Trust Funds in the Plan. Further, Defendants made a *unitary* decision to retain the entire suite of Northern Trust Funds on the Plan, and a *single* fiduciary process applied to all vintages of Northern Trust Funds. Plaintiffs challenge the prudence of Defendants' decision-making process, and each Plaintiff who owned any vintage of the Northern Trust target date funds has standing to pursue the claims, which pertain to the entire suite of funds and a single fiduciary process that resulted in those funds being offered to Plan participants.

This is consistent with the rule in securities cases that an investor who owns one fund that is part of a related series or family of investment funds has standing under the securities statutes to represent a class of investors in *all* of the funds in the instant series or family of funds when each of the funds in the series or family of funds presents "the same set of concerns." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 149 (2d Cir. 2012);[13] *Plumbers*

---

[13] In *NECA-IBEW*, the named plaintiffs purchased residential mortgage-backed certificates in two of

14

& *Pipefitters Nat. Pension Fund v. Burns*, 967 F. Supp. 2d 1143, 1164 (N.D. Ohio 2013) (following *NECA-IBEW* and determining in securities fraud case that stockholders of a company who did not personally own any bonds issued by the company nonetheless had standing to represent company bondholders in addition to stockholders because "defendants' conduct 'implicates the same set of concerns' for both stockholders and bondholders") (citation omitted).

All vintages of Northern Trust Funds included in the Plan implicate the same set of ERISA fiduciary concerns, and Plaintiffs have standing to pursue ERISA claims involving the entire suite.

**F.      Counts II and III are Not Subject to Dismissal for Lack of Standing**

Defendants do not move to dismiss Counts II or III for lack of standing, but merely argue that only one Plaintiff—Mr. Yousif—has standing to assert these claims. Mot. at 13-14. This is a distraction that has no bearing on whether these claims can be pursued as part of this case.  To the contrary, Defendants tacitly concede these claims should not be dismissed for lack of standing.[14]

**G.      Former Participants in ERISA-Covered Retirement Plans Have Standing to Sue for Injuries to Themselves and to the Plan**

Defendants assert that Plaintiffs Citron, Morgan, Am Rhein, and Reinecke lack standing to bring claims as former participants in the Plan, but this Court has repeatedly held otherwise and established that former plan participants have ERISA standing where they allege that fiduciary misconduct when they were plan participants caused them financial losses.

This Court has repeatedly held that former 401(k) plan participants have a "colorable claim to benefits"—and thus have ERISA standing—where they allege that fiduciary misconduct

---

seventeen offerings pursuant to a common shelf registration statement, though each offering used different prospectus supplements. 693 F.3d 145, 149. Because the various offering documents at issue included "nearly identical misrepresentations," the named plaintiffs could assert claims against the defendants for misrepresentations regarding some certificates plaintiffs did not purchase. *Id.* at 162.

[14] Defendants' remaining standing arguments are addressed *infra*, Section III.G, and *supra*, Section III.C.

happened when they were participants in the 401(k) plan(s) in question and lessened the value of the investments in their 401(k) plan accounts—in other words, *exactly what the former plan participant Plaintiffs Cutrone, Morgan, Am Rhein and Reinecke have alleged in this lawsuit*. *See*, *e.g.*, *Smith v. Aon Corp.,* 238 F.R.D. 609, 616 (N.D. Ill. 2006) (holding former plan participants have standing in ERISA fiduciary breach investment selection case; to hold otherwise "would be contrary to the intent of ERISA."); *Brieger v. Tellabs, Inc.*, 473 F. Supp. 2d 878, 887 (N.D. Ill. 2007) (holding that "under Seventh Circuit precedent [the former Plan participants] have standing to sue under ERISA" where they "would have received more money in the final distribution of their Plan accounts" if not for the defendants' alleged breaches of fiduciary duty); *Baker v. Kingsley*, 2007 WL 1597654, at *2 (N.D. Ill. May 31, 2007) ("Defendants argue that plaintiffs lack standing to bring an action under § 502 of ERISA because the statute allows only current, not former, plan participants to bring suits. Defendants' position is incorrect.").

In fact, this Court recognized the ERISA standing of former plan participants *in another case involving Allstate*. In *Flanagan v. Allstate Insurance Co.*, 213 F. Supp. 2d 862 (N.D. Ill. 2001), Allstate was sued by its former employees concerning another Allstate-sponsored, ERISA-covered employee benefit plan. This Court recognized the standing of various former plan participants to sue Allstate regarding alleged ERISA fiduciary breaches. *Id.* at 868 (adding that "the requirement of alleging a colorable [ERISA fiduciary] claim is not a stringent one. Status is achieved if a claim is in any way arguable; jurisdiction will only be lacking if the claim is so bizarre or so out of line with existing precedent as to fail to meet the minimal threshold of the colorable requirement. . . . Plaintiffs have met this minimal threshold.") (citing *Panaras v. Liquid Carbonic Industries Corp.*, 74 F.3d 786, 790 (7th Cir. 1996)).

So it should go here. Under settled law of this Court, including closely similar precedent

involving some of the same Allstate defendant entities that are now before this Court, class representative Plaintiffs Cutrone, Morgan, Am Rhein, and Reinecke have standing, and Defendants' motion should therefore be denied as to this issue.

**H.      Leave to Amend Should Be Granted to Cure Any Alleged Infirmities Here**

If the Court were to determine that additional allegations are needed to support any of Plaintiffs' claims, dismissal would be inappropriate and granting leave to amend would be in order. Leave to amend, of course, is freely granted in this setting. *See, e.g., Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 690 (7th Cir. 2004).

Plaintiffs here could amend their complaint to, among other things, describe the futility of resorting to administrative remedies in this case, include additional allegations supporting the low utilization rates and high costs of the Online Advice program, describe Allstate's admissions that the challenged transactions involving Financial Engines and Hewitt involved Plan assets, and add additional plaintiffs who owned other vintages of the suite of Northern Trust target date funds. Thus, as an alternative to dismissal, this Court should grant Plaintiffs leave to amend.

**IV.      CONCLUSION**

Defendants' Motion to Dismiss goes against an extensive body of ERISA case law—and, in many instances, the statutory text itself—which recognizes the right of current and former retirement plan participants like Plaintiffs to bring claims just like the ones before the Court. Defendants' administrative exhaustion and standing arguments have been rejected by the bulk of courts to have considered these issues. As to Defendants' remaining arguments, Defendants do not dispute the adequacy of most of Plaintiffs' claims and instead assert narrow arguments that challenge only small portions of Plaintiffs' allegations. Ultimately, Plaintiffs' claims are properly alleged, Defendants' Motion should be denied, and this case should proceed to discovery.

Dated: May 12, 2021

Respectfully submitted,

By: */s/ Elena N. Liveris*_____

Alexandra Harwin*
David Sanford*
**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, 31st Fl.
New York, NY 10019
Phone: (646) 402-5650
Facsimile: (646) 402-5651
aharwin@sanfordheisler.com
dsanford@sanfordheisler.com

Kevin H. Sharp*
Leigh Anne St. Charles*
**SANFORD HEISLER SHARP, LLP**
611 Commerce Street, Suite 3100
Nashville, TN 37203
Phone: (615) 434-7000
Facsimile: (615) 434-7020
ksharp@sanfordheisler.com
lstcharles@sanfordheisler.com

Charles Field*
**SANFORD HEISLER SHARP, LLP**
655 West Broadway, Suite 1700
San Diego, CA 92101
Telephone: (619) 577-4242
Facsimile: (619) 577-4250
cfield@sanfordheisler.com

Ben Barnow
Anthony L. Parkhill
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Suite 1630
Chicago, IL 60606
Phone: (312) 621-2000
Facsimile: (312) 641-5504
b.barnow@barnowlaw.com
aparkhill@barnowlaw.com

Michael M. Mulder
Elena N. Liveris
**THE LAW OFFICES OF MICHAEL M. MULDER**
1603 Orrington Avenue, Suite 600
Evanston, IL 60201
Telephone: (312) 263-0272
mmmulder@mmulderlaw.com
eliveris@mmulderlaw.com

Garrett W. Wotkyns*
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
8068 East Del Acero Drive
Scottsdale, AZ 85258
Telephone: 480-889-3514
gwotkyns@scott-scott.com

Jing-Li Yu*
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
jyu@scott-scott.com

* admitted *pro hac vice*

18

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system on May 12, 2021, and that all parties are represented by counsel of record registered with the CM/ECF system.

*/s/ Elena N. Liveris*