**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KATHERINE CUTRONE, MARY ELLEN MORGAN, MICHAEL W. SMUTZ, STAN G. SMITH, MARY BETH AM RHEIN, VALERIE REINECKE and EDDIE D. YOUSIF on behalf of themselves and all others similarly situated, <br> Plaintiffs, <br><br> v. <br><br> THE ALLSTATE CORPORATION; THE ALLSTATE 401(K) COMMITTEE; THE ALLSTATE 401(K) ADMINISTRATIVE COMMITTEE; THE ALLSTATE 401(K) INVESTMENT COMMITTEE; AND DOES 1-30, <br><br> Defendants. | CIVIL ACTION <br> NO. 1:20-cv-06463 |

**DEFENDANTS' REPLY  MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT**

## TABLE OF CONTENTS

ARGUMENT ................................................................................................................. 2

I.    EXHAUSTION OF REMEDIES IS REQUIRED UNDER THE PLAN AND CONTROLLING LAW ......... 2

II.    THE CONSOLIDATED AMENDED COMPLAINT FAILS TO STATE A CLAIM IN SEVERAL
RESPECTS. ................................................................................................................... 7

    A.    Plaintiffs Fail to Meet Rule 8's Pleading Standard. ........................................... 7

    B.    Plaintiffs' Allegations As to the Online Advice Program are Insufficient. ..................... 9

    C.    Financial Engines' Fee Arrangement with Hewitt Cannot Form the Basis of a
Prohibited Transactions Claim. ............................................................................. 10

III.    THE CONSOLIDATED AMENDED COMPLAINT IS PLAGUED BY STANDING ISSUES. ........... 11

    A.    Plaintiffs Lack Standing to Challenge the Focus Funds in Which They Did Not Invest.
11

    B.    Former Participants Lack Standing. ............................................................... 13

IV.    PLAINTIFFS' REQUEST TO AMEND SHOULD BE DENIED. .................................................. 15

CONCLUSION ............................................................................................................ 16

## Table of Authorities

**Page(s)**

**Cases**

*In re AEP ERISA Litig.*,
    327 F. Supp. 2d 812 (S.D. Ohio 2004) ..................................................................8

*Allen v. GreatBanc Tr. Co.*,
    835 F.3d 670 (7th Cir. 2016) ...............................................................................8

*Baker v. Kingsley*,
    2007 WL 1597654 (N.D. Ill. May 31, 2007) ......................................................14

*Bank of Am., N.A. v. Knight*,
    725 F.3d 815 (7th Cir. 2013) ...............................................................................8

*Bingham v. CNA Financial Corp.*,
    2004 WL 2390093 (N.D. Ill. Oct. 25, 2004)........................................................4

*Braden v. Wal-Mart Stores, Inc.*,
    588 F.3d 585 (8th Cir. 2009) ....................................................................8, 12, 13

*Brieger v. Tellabs, Inc.*,
    473 F. Supp. 2d 878 (N.D. Ill. 2007) .................................................................14

*Brown-Davis v. Walgreen Co, et al.*,
    2020 WL 8921399 (N.D. Ill. Mar. 16, 2020).....................................................12

*In re CMS Energy ERISA Litig.*,
    312 F. Supp. 2d 898 (E.D. Mich. 2004)...............................................................9

*Concha v. London*,
    62 F.3d 1493 (9th Cir. 1995) ...............................................................................8

*DeBruyne v. Equitable Life Assur. Soc. of U.S.*,
    920 F.2d 457 (7th Cir. 1990) ...............................................................................5

*Divane v. Nw. Univ.*,
    953 F.3d 980 (7th Cir. 2020) .............................................................................11

*Dodd v. Pentair Pump Grp.*,
    2012 WL 1985701 (N.D. Ill. June 1, 2012) .........................................................4

*In re Elec. Data Sys. Corp. "ERISA" Litig.*,
    305 F. Supp. 2d 658 (E.D. Tex. 2004).................................................................8

*Falberg v. Goldman Sachs Grp., Inc.*,
   2020 WL 3893285 (S.D.N.Y. July 9, 2020) ...............................................................12

*Fallick v. Nationwide Mut. Ins. Co.*,
   162 F.3d 410 (6th Cir. 1998) .....................................................................................12

*Flanagan v. Allstate Ins. Co.*,
   213 F. Supp. 2d 862 (N.D. Ill. 2001) .................................................................13, 14

*Fleming v. Fid. Mgmt. Tr. Co.*,
   2017 WL 4225624 (D. Mass. Sept. 22, 2017) ........................................................11

*George v. Kraft Foods Glob., Inc.*,
   641 F.3d 786 (7th Cir. 2011) .......................................................................................9

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009) .......................................................................................5

*Howell v. Motorola, Inc.*,
   2006 WL 2355586 (N.D. Ill. Aug. 11, 2006) ....................................................14, 15

*Humana Health Plan, Inc. v. Nguyen*,
   785 F.3d 1023 (5th Cir. 2015) .....................................................................................8

*Jakubiec v. Inland Material Handling Inc. Emp. Ben. Plan*,
   2002 WL 1759832 (N.D. Ill. July 30, 2002) ..............................................................8

*Johnson v. Winstead*,
   447 F. Supp. 3d 715 (N.D. Ill. 2019) ........................................................................15

*Kross v. W. Elec. Co.*,
   534 F. Supp. 251 (N.D. Ill. 1982) ...............................................................................3

*Kross v. W. Elec. Co.*,
   701 F.2d 1238 (7th Cir. 1983) .....................................................................................3

*Krueger v. Ameriprise Fin., Inc.*,
   304 F.R.D. 559 (D. Minn. 2014) ..............................................................................13

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
   323 F.R.D. 145 (S.D.N.Y. 2017) ..............................................................................12

*Lingis v. Motorola, Inc.*,
   649 F. Supp. 2d 861 (N.D. Ill. 2009) ..........................................................................5

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011) ......................................................................................................6

*McDonald v. Jones*,
   2017 WL 372101 (E.D. Mo. Jan. 26, 2017) ...................................................13

*Med. Alls., LLC v. Am. Med. Sec.*,
   144 F. Supp. 2d 979 (N.D. Ill. 2001) ...........................................................4

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
   693 F.3d 145 (2d Cir. 2012)..........................................................................13

*Neil v. Zell*,
   767 F. Supp. 2d 933 (N.D. Ill. 2011) ...................................................11, 15

*Powell v. A.T. & T. Commc'ns, Inc.*,
   938 F.2d 823 (7th Cir. 1991) ........................................................................3

*Scott v. Aon Hewitt Fin., Advisors, LLC*,
   2018 WL 1384300 (N.D. Ill. Mar. 19, 2018)......................................7, 9, 10, 11

*Simon v. E. Kentucky Welfare Rights Org.*,
   426 U.S. 26 (1976).......................................................................................15

*Smith v. Aon Corp.*,
   238 F.R.D. 609 (N.D. Ill. 2006)....................................................................14

*Steinman v. Hicks*,
   352 F.3d 1101 (7th Cir. 2003) ......................................................................5

*Vanderwiel v. Schawk USA, Inc.*,
   2012 WL 4932658 (N.D. Ill. Oct. 16, 2012)............................................3, 4

*Waldron v. Dugan*,
   2007 WL 4365358 (N.D. Ill. Dec. 13, 2007)................................................4

*Zhou v. Guardian Life Ins. Co. of Am.*,
   295 F.3d 677 (7th Cir. 2002) ........................................................................3

**Statutes**

29 U.S.C. § 1104(a)(1)(B) .................................................................................4

29 U.S.C. § 1104(a)(1)(C) .................................................................................5

29 U.S.C. § 1106(a)(1)(d) .............................................................................2, 10

29 U.S.C. § 1106(b)(3) ..................................................................................2, 10

iv

Plaintiffs' Consolidated Amended Complaint asserts ERISA fiduciary duty claims based on investment performance and expenses, but analysis of the actual allegations belies Plaintiffs' rhetoric that they were harmed at all. Plaintiffs fail to refute any of Defendants' numerous arguments requiring dismissal of this suit in whole or in part. Relying largely on irrelevant or out-of-circuit authority, Plaintiffs do not challenge Defendants' key authorities, including the language of the Plan and the language of the statute.

The terms of the Plan make clear that this case should be dismissed for failure to exhaust administrative remedies. Ignoring the Plan itself, Plaintiffs cherry-pick quotations from cases that have no bearing on the claims alleged in this action. The well-established policy behind the exhaustion requirement applies here, where Plaintiffs' claims are nothing more than run of the mill complaints that Plaintiffs' investments should have earned more money than they did. Had Plaintiffs properly utilized the procedures set forth in the Plan, Defendants could have addressed these arguments and explained the merit of the Focus Funds without resort to litigation. For this reason alone, the complaint should be dismissed.

The Consolidated Amended Complaint should also be dismissed for failure to state a claim because Plaintiffs engage in improper collective pleading. The simple fact is that the complaint lumps all Defendants together without providing sufficient detail of what actions each Defendant is alleged to have taken. This is contrary to Rule 8 and requires dismissal.

Further, large swaths of the Complaint are subject to dismissal in their own right. Plaintiffs again ignore the language of the Plan documents in arguing that they should be excused from pleading factual allegations with respect to the Online Advice program. But Plaintiffs have no excuse for failing to meet basic pleading standards. Plaintiffs also cannot state a claim with respect to the financial arrangement between Financial Engines and Hewitt. The arrangement did not

involve Plan assets, as required by 29 U.S.C. § 1106(a)(1)(d), nor was Hewitt a fiduciary as required by § 1106(b)(3).

The named Plaintiffs also lack standing in various respects. None of the named Plaintiffs invested in six of the Focus Funds at issue (and when considering only those Plaintiffs who have standing, they did not invest in nine of the 11 funds), and Plaintiffs' out-of-circuit authority is unpersuasive in light of the recent decision from this Court dismissing claims on the same grounds. Similarly, most of the named Plaintiffs have no standing to challenge the fees charged by Financial Engines or AFA because they did not use those services. Far from a "distraction" as Plaintiffs suggest, this is a principle issue of standing that must be addressed as a threshold matter. Lastly, Plaintiffs fail to cite any relevant authority supporting their position that Plaintiffs Cutrone, Morgan, Am Rhein and Reinecke have standing as former participants. They do not.

Accordingly, Defendants request that the complaint be dismissed in its entirety for failure to state a claim. Alternatively, Plaintiffs Cutrone, Morgan, Am Rhein and Reinecke and Defendants The Allstate 401(k) Committee and The Allstate 401(k) Administrative Committee should be dismissed from this action. Count I should be dismissed with respect to the 2010, 2015, 2020, 2030, 2040, 2045, 2050, 2055 and 2060 Focus Funds and Plaintiff Yousif has no standing with respect to Count I. Count II should be dismissed with respect to the Online Advice Program and Count III should be dismissed with respect to the compensation arrangement between Financial Engines and Hewitt. Both Counts II and III should be limited to only Plaintiff Yousif.

## **ARGUMENT**

## I. **EXHAUSTION OF REMEDIES IS REQUIRED UNDER THE PLAN AND CONTROLLING LAW.**

Both the Plan and governing law establish that Plaintiffs are required to exhaust their administrative remedies for breach of fiduciary duty claims. The Plan specifically explains that a

Claimant must exhaust his administrative remedies for "***any claim for breach of fiduciary duty***" prior to filing suit.  (ECF No. 21-2, Plan at § 11.9, emphasis added.)  Plaintiffs wholly ignore this unambiguous requirement.  This provision is consistent with prevailing Seventh Circuit law. *Powell v. A.T. & T. Commc'ns, Inc.*, 938 F.2d 823 (7th Cir. 1991); *Zhou v. Guardian Life Ins. Co. of Am.*, 295 F.3d 677 (7th Cir. 2002).

Plaintiffs' reliance on *Kross v. W. Elec. Co.*, 534 F. Supp. 251 (N.D. Ill. 1982) is misplaced. On appeal, the Seventh Circuit held that "strong federal policy expressed in case law, encouraging private resolution of ERISA-related disputes, mandates the application of the exhaustion doctrine in this case." *Kross v. W. Elec. Co.*, 701 F.2d 1238, 1244 (7th Cir. 1983) (considering plaintiff's claim under § 502(a)(3)).  Here, Plaintiffs bring claims under *both* §§ 502(a)(2) and 502(a)(3). (*See* CC at ¶¶ 173, 175, 183, 199-201.)  While the Seventh Circuit has never directly addressed the question of whether exhaustion is required for breach of fiduciary duty claims, it has indicated that the federal policy behind the exhaustion requirement requires extending "the exhaustion doctrine to statutory claims for breach of a fiduciary duty under ERISA."  *Powell*, 938 F.2d at 825.

Plaintiffs' procedural argument fares no better.  The public policy behind requiring exhaustion of administrative remedies supports Defendants' position that exhaustion should be dealt with at the motion to dismiss stage.  Allowing a plaintiff to stay silent as to administrative remedies in its pleading, forcing the defendant to engage in costly discovery only to have  the court dismiss the action on summary judgment for failure to exhaust contradicts the well-established public policy that exhaustion of remedies should be used to "decrease the cost and time of claims settlement."  *Powell*, 938 F.2d at 826.  Indeed, this Court has recognized "[i]n the absence of any allegations regarding the required administrative procedures, we must dismiss the complaint for failure to exhaust administrative remedies."  *Vanderwiel v. Schawk USA, Inc*., 2012 WL 4932658,

at *2 (N.D. Ill. Oct. 16, 2012).[1]  To the extent that the earlier *Waldron v. Dugan*, 2007 WL 4365358, at *5 (N.D. Ill. Dec. 13, 2007) suggests otherwise, it should be rejected.[2]

Plaintiffs' argument that exhaustion would be futile is both an improper attempt to amend their pleading through briefing and is incorrect.  The structure of the Plan and the duties of the distinct committees, far from being inconsistent as Plaintiffs suggest, confirms that exhaustion would *not* have been useless.  Because the 401(k) Administrative Committee had no role in the decisions which form the basis of Plaintiffs' claims (*see* ECF No. 21 at 9-10), it would not have been reviewing its own decisions when acting as arbitrator of disputes under the Plan.  Even if this were not the case, it is not enough to establish futility—"[that] the individual named defendant would be the one reviewing the plaintiff's administrative appeal is not enough to relieve plan participants of the duty to exhaust remedies."  *Med. Alls., LLC v. Am. Med. Sec.*, 144 F. Supp. 2d 979, 983 (N.D. Ill. 2001).  Further, for the futility exception to apply,  "a plaintiff must show that its claim would be denied with certainty."  *Id.*

A review of Plaintiffs' allegations also makes clear that Defendants should have been given the opportunity to address Plaintiffs' concerns and explain that Plaintiffs are improperly focusing only on the returns of the Focus Funds rather than considering the combined impact of investment risk and return.   While the Consolidated Amended Complaint references 29 U.S.C. §1104(a)(1)(B), the standard for prudence, and complains with colorful adjectives about the returns Plaintiffs did not earn, the plain truth is that Plaintiffs lost nothing.  Rather, they allege they

---

[1]  Plaintiffs' attempt to distinguish *Vanderwiel* and *Bingham v. CNA Financial Corp*., 2004 WL 2390093 (N.D. Ill. Oct. 25, 2004) on the grounds that they involved claims for denial of individual benefits (ECF No. 30 at 3, n.2) has no bearing on the procedural question of whether exhaustion is sufficiently alleged.

[2]  Plaintiffs' other authority, *Dodd v. Pentair Pump Grp*., 2012 WL 1985701, at *2 (N.D. Ill. June 1, 2012), is inapposite because it was unclear in that case whether any administrative remedies even existed as the defendant failed to attach a copy of the Plan.

did not earn as high of returns as they wanted.  And Plaintiffs ignore § 1104(a)(1)(C), that the Plan fiduciaries also are required to "diversify[ ] the investments of the plan so as to minimize risk of large losses."  It is this balancing of risk and returns that is required of portfolio management.  *See Hecker v. Deere & Co.*, 556 F.3d 575, 589-90 (7th Cir. 2009); *Lingis v. Motorola, Inc.*, 649 F. Supp. 2d 861, 878 (N.D. Ill. 2009) (describing "potential risk and return exposure").

When one considers the numerical allegations presented in the complaint, incorporating an assessment of investment risk and returns, the math squarely contradicts Plaintiffs' hyperbole. Plaintiffs' tables provide a great deal of data regarding the annual performance of Northern Trust Funds and a handful of allegedly comparable funds, with annual returns reported for up to 7 years and for as many as 10 funds within each fund family.  (*See* CC at Tables 1b-10b.)  This allows one to calculate average annual returns (means, on which Plaintiffs' allegations concentrate), and the variances (or standard deviations)[3] around those means, which are essentially measures of risk. *See Steinman v. Hicks*, 352 F.3d 1101, 1104-05 (7th Cir. 2003); *DeBruyne v. Equitable Life Assur. Soc. of U.S.*, 920 F.2d 457, 462-63 and n. 7 (7th Cir. 1990).

Drawn from Tables 1b-10b, the simple math shows the following:

|  | Mean | Standard Deviation | Standard Deviation / Mean |
|---|---|---|---|
| NT Focus Fund - W | 6.97% | 0.0931 | 1.336 |
| FIAM Index Target Date T | 8.18% | 0.0997 | 1.219 |
| T. Rowe Price Ret Hybrid Tr-T1 | 8.82% | 0.1014 | 1.150 |
| State St Target Ret 2020 NL Cl K | 8.62% | 0.1095 | 1.271 |
| Vanguard Target Retirement | 8.14% | 0.1004 | 1.234 |
| American Funds Trgt Date Retire R6 | 8.50% | 0.0950 | 1.117 |
| MSCI ACWI IMI NR | 9.30% | 0.1268 | 1.363 |
| S&P Target Date Through TR | 7.84% | 0.0954 | 1.216 |
| S&P Target Date TR | 7.52% | 0.0914 | 1.215 |

---

[3]  Mathematically, simply the square root of the variance.

5

While aggregating the annual returns reported by Plaintiffs in the above table indeed shows that the Northern Trust funds has the lowest overall mean performance of the funds presented in the complaint,[4] the Northern Trust fund family also exhibits the second lowest standard deviation of returns, meaning it offers Plan participants less risk than most of the other purported comparables selected by Plaintiffs.[5] And while Plaintiffs allege that the Northern Trust funds "consistently underperformed" against the Morgan Stanley funds, which generally gets Plaintiffs' top performance honors (CC at ¶ 57), when combining risk and return into a single measure (dividing the standard deviation by the mean, called a Coefficient of Variation[6]), the one family of funds that the Northern Trust family "outperforms" from Plaintiffs' list of comparables is actually the Morgan Stanley funds. It does so precisely because the Morgan Stanley funds earned high average returns at the price of higher volatility, or a higher standard deviation, than any other reported fund. Thus, a close inspection of Plaintiffs' own data demonstrates that the Northern Trust funds' performance, while lower on some measures than the comparables presented, are hardly statistical outliers.

Plaintiffs also implicitly acknowledge that they were offered a wide variety of investment options, in addition to the Target Retirement Date Funds. According to Plaintiffs, participants invested $700 million in the Northern Trust Funds as of December 2019, out of plan investment

---

[4] The five "Comparator Funds" utilized in the Consolidated Amended Complaint are simply funds cherry-picked by Plaintiffs out of dozens of Target Date Funds offered by numerous firms. *See* https://www.morningstar.com/target-date-funds.

[5] Plaintiffs complaint uses the term "significantly underperformed" but it is unclear if Plaintiffs are implicitly referring to "statistical significance" or something else. And while statistical significance (for instance, are the Northern Trust fund returns more than 2 standard deviations away from the mean return of the comparables) can be helpful, it is not a definitive test courts necessarily rely upon. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 43 (2011).

[6] A smaller standard deviation implies less risk, and a higher average return is certainly preferable to investors. So with the standard deviation in the numerator and mean returns in the denominator, less risk and higher returns both favor a lower Coefficient of Variation.

assets of "approximately $6 billion". (CC at ¶¶ 42-43.) The funds in question then amount to less than 12% of invested dollars, and the Plan itself describes more than 10 pages of investment options, with 7 pages describing options other than the Target Retirement Date Funds if participants sought more, other, or different return and risk profiles (stable value funds, bond funds, S&P 500 Fund, Real Asset Fund, Mid-Cap Fund, Russell 2000 Fund, International Equity Fund, and Emerging Markets Fund). (ECF No. 21-1 at 22-33.)

The math one derives from the Consolidated Amended Complaint and its allegations about what was available to Plaintiffs all demonstrate why Plaintiffs needed to pursue administrative remedies before jumping to litigation. Defendants should have had an opportunity to evaluate Plaintiffs' allegations and explain what investment opportunities were made available and why. Plaintiffs cannot and should not be allowed to proceed with a case just because they assert, however vociferously, that they did not make as much money as they would have liked, especially when they implicitly acknowledge that they lost nothing.

## II. THE CONSOLIDATED AMENDED COMPLAINT FAILS TO STATE A CLAIM IN SEVERAL RESPECTS.

### A. Plaintiffs Fail to Meet Rule 8's Pleading Standard.

Plaintiffs' opposition misses the point with respect to Defendants' collective pleading argument. It is not enough as Plaintiffs claim to allege each Defendant's "responsibilities with respect to the Plan and its role as a fiduciary" in general. (ECF No. 30 at 5.) Rather, Plaintiffs must allege each Defendant's role *with respect to the conduct giving rise to the claims*. "The threshold question in all cases charging breach of fiduciary duty is whether the defendant was 'acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.'" *Scott v. Aon Hewitt Fin., Advisors, LLC*, 2018 WL 1384300, at *3 (N.D. Ill. Mar. 19, 2018) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)). Plaintiffs have failed to meet

this standard. As exemplified in their brief, Plaintiffs can only point to allegations alleging that the "Allstate Defendants" in general engaged in certain conduct. (*See* ECF No. 30 at 5, citing CC at ¶¶ 3, 8, 13.) This is the antithesis of federal pleading standards, which mandate that "***[e]ach defendant*** is entitled to know what he or she did that is asserted to be wrongful." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) (emphasis added).

Plaintiffs' reliance on *Allen v. GreatBanc Tr. Co*., 835 F.3d 670, 678 (7th Cir. 2016) (ECF No. 30 at 4) is curious, as *Allen* involved only one defendant. The *Allen* court held that plaintiffs need "not describe in detail the *process* GreatBanc used," and did not address at all the question of collective pleading. *Id*. *Jakubiec v. Inland Material Handling Inc. Emp. Ben. Plan*, 2002 WL 1759832, at *2 (N.D. Ill. July 30, 2002) is also not on point, as the court simply held that "a proper party defendant on a claim to recover benefits under ERISA § 502(a)(1)(B) is the ERISA plan itself." Here, Plaintiffs do not name the Plan.[7]

Further, Plaintiffs fail to meaningfully contest Defendants' argument that the complaint's "vague allegations are insufficient to establish that the 401(k) Committee and the 401(k) Administrative Committee acted as fiduciaries with respect to the conduct of which Plaintiffs complain." (ECF No. 21 at 9.) While Plaintiffs contend that fiduciary status should not be determined at the pleading stage, the cases they cite are distinguishable in that they at least alleged some facts tending to establish fiduciary status. *See e.g. In re Elec. Data Sys. Corp. "ERISA" Litig*., 305 F. Supp. 2d 658, 666 (E.D. Tex. 2004) ("Plaintiffs have made specific factual allegations regarding Defendants' functional fiduciary status."). No similar allegations are present

---

[7] None of Plaintiffs' out-of-circuit authority is persuasive either. *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 598 (8th Cir. 2009) had nothing to do with collective pleading. Both *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995) and *In re AEP ERISA Litig*., 327 F. Supp. 2d 812, 822 (S.D. Ohio 2004) simply held that Rule 9(b) does not apply to ERISA cases, a proposition Defendants do not contest. And *Humana Health Plan, Inc. v. Nguyen*, 785 F.3d 1023 (5th Cir. 2015) was decided on summary judgment, not a motion to dismiss.

here.  And contrary to Plaintiffs' argument, the Court in *In re CMS Energy ERISA Litig*., 312 F. Supp. 2d 898, 908 (E.D. Mich. 2004) did actually review the Plan in detail on the motion to dismiss.  Given the insufficient allegations in the Consolidated Amended Complaint, the 401(k) Committee and 401(k) Administrative Committee should be dismissed.

### B.      Plaintiffs' Allegations As to the Online Advice Program are Insufficient.

Nothing in Plaintiffs' opposition changes the fact that their allegations regarding the Online Advice Program are mere conclusory allegations devoid of facts warranting dismissal.  *See Scott*, 2018 WL 1384300, at *12 (dismissal is appropriate where the "complaint does not include any factual allegations that challenge the fees paid as not consistent with the fair market value of the services provided or some other acceptable metric for a reasonable fee").  Plaintiffs' only argument is that the fees for the Online Advice Program must be excessive because they were charged to all participants regardless of use.  But Plaintiffs cite no authority for this proposition.  Indeed, *Scott* rejected as insufficient a similar allegation that "a significant portion of the total fees were being syphoned to pay off Hewitt for performing no work and providing no value[.]"  *Id*.[8]

Further, Plaintiffs' argument that they do not have access to the information related to the Online Advice Program is false.  The Summary Plan Description specifically states that

> [a]sset-based fees are fees that you won't see directly because they are charged to the Plan investment options and reduce your investment earnings.  They include:
>
> Administrative expenses: **fees and expenses related to the online investment advisory services** and the on-going administrative, governance and legal compliance of the Plan including trustee, record keeping, and other administrative expenses. These fees are charged proportionately to each investment fund.
>
> Investment management fees: fees paid to the investment manager for selecting and managing the investments in an investment option. . .

---

[8] *George v. Kraft Foods Glob., Inc*., 641 F.3d 786 (7th Cir. 2011), cited by Plaintiffs (ECF No. 30 at 6, 8), was decided on summary judgment and thus provides no guidance with respect to whether Plaintiffs satisfied the pleading standard.

> **These asset-based fees ranged from .05% to .36% in 2017 with an average fee of .12%.**

(ECF No. 21-1, SPD at 33; emphasis added.)  Plaintiffs have no excuse for failing to plead any non-conclusory allegations with respect to the Online Advice Program.

### C.  Financial Engines' Fee Arrangement with Hewitt Cannot Form the Basis of a Prohibited Transactions Claim.

Plaintiffs' response to Defendants' challenge of the prohibited transactions claim misses the mark.  First, Plaintiffs' reliance on § 1106(b)(3) is misplaced given that Hewitt was not acting in a fiduciary capacity when it received compensation from Financial Engines.  The *Scott* court already decided this exact question, holding that Hewitt was not a fiduciary.  *Scott*, 2018 WL 1384300, at **4-7.  Here, Plaintiffs' allegations concerning Hewitt's alleged fiduciary status are even weaker than in *Scott*.  There are no allegations in the complaint that "Hewitt exercised discretionary authority over the Plan or its assets" in order to confer fiduciary status.  *Id*. at *6. The court held that "because Scott has failed to state a claim that Hewitt is a fiduciary, she also cannot establish a § 406[(b)](3) claim against Hewitt[.]"  *Id*. at *12.  The same is true here. Plaintiffs' reliance on § 1106(b)(3) should be rejected.

Given the inapplicability of § 1106(b)(3), Plaintiffs must fall back on § 1106(a)(1)(D) which requires "transfer to, or use by or for the benefit of a party in interest, ***of any assets of the plan***[.]" (emphasis added).  Plaintiffs fail to provide any support for their contention that the fees paid from Financial Engines to Hewitt were "assets of the plan".  Plaintiffs' citation to the Plan's Department of Labor filings is not to the contrary.  As quoted by Plaintiffs, Defendants disclosed the "indirect" compensation paid to Hewitt.  (ECF No. 30 at 10.)  Nothing about this statement supports Plaintiffs' argument that these fees were Plan assets.

Moreover, Plaintiffs' attempt to distinguish Defendants' case law falls flat.  Just like in *Scott*, who was represented by some of the same counsel, Plaintiffs have "not cited any authority

10

holding that funds paid by a plan to a service provider continue to be plan assets after the transfer." 2018 WL 1384300, at *10. Thus, once the fees were paid to Financial Engines, they were no longer Plan assets and could be transferred to Hewitt without restriction. In *Divane*, the Seventh Circuit rejected a similar argument that "unreasonable fee collected from plan participants for recordkeeping costs constituted a prohibited transaction under ERISA," holding that "after a fee is collected by a recordkeeper, the amount of those fees becomes the property of the fund such that the transfer of some of it for recordkeeping costs is not a transfer of plan assets." *Divane v. Nw. Univ.*, 953 F.3d 980, 992 (7th Cir. 2020).[9] These cases compel the conclusion that the fee arrangement between Financial Engines and Hewitt was not a "prohibited transaction" as Plaintiffs contend.

III.    **THE CONSOLIDATED AMENDED COMPLAINT IS PLAGUED BY STANDING ISSUES.**

    A.    **Plaintiffs Lack Standing to Challenge the Focus Funds in Which They Did Not Invest.**

Plaintiffs have failed to establish that courts within this Circuit allow plaintiffs to challenge investments for which they have no personal connection. The only in-circuit authority cited by Plaintiffs, *Neil v. Zell*, 767 F. Supp. 2d 933 (N.D. Ill. 2011) (ECF No. 30 at 13) is irrelevant to this question. In *Neil*, the question was whether former participants had standing. *Id.* at 950. As discussed below, that is a separate question from whether the Plaintiffs have standing to challenge funds in which they did not invest. There was no claim in *Neil* that the plaintiffs ***never*** owned the funds. But that is the issue here—none of the Plaintiffs ***ever*** invested in six of the 11 Focus Funds (and when considering only those Plaintiffs who have standing, the number of funds in which they did not invest rises to nine of 11). (*See* ECF No. 21 at 12.)

---

[9]    *See also Fleming v. Fid. Mgmt. Tr. Co.*, 2017 WL 4225624, at *9 (D. Mass. Sept. 22, 2017) ("fees [collected] from the mutual funds or from FE are not 'assets of the plan' within the meaning of ERISA.").

In contrast, Defendants cited direct in-circuit authority clearly showing that Plaintiffs do *not* have standing to challenge funds in which they did not invest. (*See id.* at 12-13.) Plaintiffs do not even address the holding in *Brown-Davis v. Walgreen Co, et al.*, 2020 WL 8921399, at *3 (N.D. Ill. Mar. 16, 2020) that "Plaintiffs have therefore not suffered any individualized harm as to these funds" in which they did not invest. This authority is fatal to their claim.

Plaintiffs' citation to a host of out-of-circuit authority is not helpful or necessary in light of the direct authority in *Brown-Davis*. Notably, *Falberg v. Goldman Sachs Grp., Inc.*, 2020 WL 3893285, at **7-8 (S.D.N.Y. July 9, 2020) is based on this notion of "class standing" as articulated in *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 154 (S.D.N.Y. 2017). But the court in *Brown-Davis* rejected *Leber* outright. 2020 WL 8921399, at *3. The reality is that none of the cases cited by Plaintiffs have been followed in this Circuit, and the Plaintiffs present no compelling reason why the Court should adopt any of this out-of-circuit authority rather than the reasoned decision of its colleague in *Brown-Davis*. As set forth in Defendants' opening brief, Judge Norgle's decision in *Brown-Davis* was consistent with decisions in other circuits on similar claims, as well as Supreme Court precedent requiring the named plaintiff to show an individualized injury even in putative class actions. (*See* ECF No. 21 at 12-13.)

Other cases cited by Plaintiffs are factually distinguishable. For example, *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) concerned "the methodology used to determine benefits" which was uniform across various plans. Here, the performance of each Focus Fund is unique. *Braden* challenged only the fees charged by each of the funds, not the alleged underperformance of the funds. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 589–90 (8th Cir.

12

2009).[10] Further, Plaintiffs' citation to securities cases is wholly inapplicable. As Defendants explained in their opening brief (ECF No. 21 at 13, n.3), *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) is distinguishable because those plaintiffs were challenging "similar if not identical" misrepresentations, whereas the performance of each Focus Fund is not uniform.

In sum, Plaintiffs have failed to allege any cognizable injury-in-fact stemming from the alleged underperformance of the funds in which they did not invest. Accordingly, the claims related to the 2010, 2015, 2020, 2030, 2040, 2045, 2050, 2055 and 2060 Focus Funds must be dismissed.

### B. Former Participants Lack Standing.[11]

Plaintiffs' response on the former participants ignores the key distinction between benefits and damages that is present in the statute and case law. (*See* ECF No. 21 at 14-17.) All of the cases cited by Plaintiffs involved claims for benefits, not damages as Plaintiffs seek.

First, *Flanagan v. Allstate Ins. Co.*, 213 F. Supp. 2d 862, 866 (N.D. Ill. 2001) involved benefits in the form of severance payments. *Flanagan* also involved a well-established exception to former participant standing concerning a former participant who is no longer active *as a result of* the alleged fiduciary breaches. In *Flanagan*, the plaintiffs alleged that defendant "intimidated and harassed its employee-agents to retire, terminate or convert, so as to minimize their ERISA benefits under existing plans and to prevent them from maintaining eligibility for the ERISA

---

[10] *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 567 (D. Minn. 2014) and *McDonald v. Jones*, 2017 WL 372101, at *2 (E.D. Mo. Jan. 26, 2017) are district court decisions that followed their own circuit authority in *Braden*.

[11] Plaintiffs do not appear to contest that only Mr. Yousif has standing with respect to Counts II and III because he is the only (current) participant who used the Professional Management program. (ECF No. 30 at 15.) Accordingly, if any portions of Counts II and III survive, they should be limited to the claims that can be properly asserted by Mr. Yousif only.

severance payments that were under consideration." *Id*. at 868; *see Howell v. Motorola, Inc*., 2006 WL 2355586, at *3 (N.D. Ill. Aug. 11, 2006) (noting that "the *Flanagan* court recognized standing only for those class members who were forced to quit"). No such allegations exist here. *Baker v. Kingsley*, 2007 WL 1597654, at *2 (N.D. Ill. May 31, 2007) also involved a claim for benefits, specifically healthcare benefits.

Both *Smith v. Aon Corp*., 238 F.R.D. 609 (N.D. Ill. 2006) and *Brieger v. Tellabs, Inc*., 473 F. Supp. 2d 878 (N.D. Ill. 2007) involved much less speculative losses than those alleged here because both cases involved alleged breaches of fiduciary duty with respect to the selection of company stock, not third-party investments. In *Smith*, the plaintiffs alleged that "Defendants overconcentrated Plan purchases of Aon stock, imprudently permitted the Plan to hold Aon stock," and "provided employer matching contributions in knowingly overvalued Aon stock[.]" 238 F.R.D. at 613. Similarly, *Brieger* alleged that defendants "breached their fiduciary duties . . . by failing to prudently manage the Plan's investment in Tellabs' securities and maintaining the Plan's heavy investment in Tellabs equity when Tellabs stock was no longer a prudent investment for the Plan." 473 F. Supp. 2d at 882. In both cases, the plaintiffs were not given a choice between company stock and a variety of other investment options; they were simply given stock.

In contrast, the Focus Funds at issue in this case were provided as choices among nearly two dozen investments and each Plaintiff had the full authority and ability to remove his or her account balance from the Target Funds. (ECF No. 21-1 at 20-21.) Even if Plaintiffs were to prevail on their claim that Defendants breached their fiduciary duties by failing to offer alternative investments, Plaintiffs have no entitlement to the proceeds of those alternative investments. It is entirely speculative that Plaintiffs would have chosen to invest in those funds had they been offered as opposed to the numerous other choices. This type of "unadorned speculation will not suffice to

invoke the federal judicial power." *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 44 (1976) (plaintiffs failed to carry their burden on standing where "[s]peculative inferences are necessary to connect their injury to the challenged actions" of defendants).[12]

Plaintiffs fail to address the case cited by Defendants in their opening brief, *Howell v. Motorola, Inc.*, 2006 WL 2355586 (N.D. Ill. Aug. 11, 2006) (ECF No. 21 at 15-16). Although *Howell* involved company stock, it is more similar to this case because the participants could "direct the Plan to purchase investments from among the investment options available in the Plan" and company stock was only one of the investment options. *Id.* at *2. Thus, *Howell*'s holding that the former participants lacked standing because they were seeking damages not benefits is in line with this case.

## IV.    PLAINTIFFS' REQUEST TO AMEND SHOULD BE DENIED.

In seeking leave to amend, Plaintiffs ignore the procedural history of this case and the numerous opportunities they have had to state a claim. Plaintiffs suggest that in an amended complaint they could "describe the futility of resorting to administrative remedies[.]" (ECF No. 30 at 17.) But Defendants first raised exhaustion in their initial motion to dismiss. (ECF No. 13 at 9-10.) Plaintiffs filed two complaints since then. (ECF No. 14 (Amended Complaint); ECF No. 20 (Consolidated Amended Complaint).) Plaintiffs failed to properly address exhaustion in either iteration and should not be allowed yet another bite at the apple. *See Johnson v. Winstead*, 447 F. Supp. 3d 715, 722 (N.D. Ill. 2019) (plaintiff "is not entitled to additional opportunities" to amend if he failed to remedy defects or "made a considered choice not to include information or claims

---

[12]  *Neil v. Zell*, 767 F. Supp. 2d 933, 950 (N.D. Ill. 2011) is distinguishable on this ground, as the court held that "it is far from 'exceedingly speculative that a plan fiduciary could have found an investment that would have yielded a return more favorable than a 100 percent loss." Here, none of the investments suffered a loss at all, let alone a 100 percent loss. Plaintiffs simply make a speculative claim that they should have incurred larger returns.

known").

Plaintiffs also suggest that they should be allowed to "add additional plaintiffs who owned other vintages of the suit of" Focus Funds.  (ECF No. 30 at 17.)  But Plaintiffs have already cycled through three complaints and seven named Plaintiffs.  They have already had ample opportunity to get it right.  Amendment at this stage is improper.

At the same time, amendment of the other claims would also be futile.  No matter what alleged "admissions" Plaintiffs drum up, the law is clear that the fees paid to Hewitt were not Plan assets.  No amount of pleading can overcome these deficiencies.

## <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiffs' Consolidated Amended Complaint should be dismissed in its entirety, with prejudice.  Alternatively, Plaintiffs Cutrone, Morgan, Am Rhein and Reinecke and Defendants The Allstate 401(k) Committee and The Allstate 401(k) Administrative Committee should be dismissed from this action.  Count I should be dismissed with respect to the 2010, 2015, 2020, 2030, 2040, 2045, 2050, 2055 and 2060 Focus Funds and Plaintiff Yousif has no standing with respect to Count I.  Count II should be dismissed with respect to the Online Advice Program and Count III should be dismissed with respect to the compensation arrangement between Financial Engines and Hewitt. Counts II and III must be limited to Plaintiff Yousif.

Dated: June 9, 2021

Respectfully submitted,

DENTONS US LLP

*/s/ Leah R. Bruno*
Leah R. Bruno
Jacqueline A. Giannini
233 South Wacker Drive. Suite 5900
Chicago, IL 60606
Telephone: (312) 876-8000

Facsimile: (312) 876-7934
leah.bruno@dentons.com
jacqui.giannini@dentons.com

Stephen J. O'Brien
(*pro hac vice* forthcoming/MO Bar: 43977)
211 N. Broadway, Suite 3000
St. Louis, MO 63102
Telephone: (314) 259-5904
Facisimile: (314) 259-5959
stephen.obrien@dentons.com

Uchenna Ekuma-Nkama
(*pro hac vice* forthcoming/GA Bar: 957861)
303 Peachtree Street, Suite 5300
Atlanta, Georgia 30308
Telephone: (404) 527-4000
Facsimile: (404) 527-4198
uchenna.ekuma-nkama@dentons.com


*Attorneys for Defendants The Allstate Corporation,*
*The Allstate 401(K) Committee, The Allstate 401(K)*
*Administrative Committee, and The Allstate 401(K)*
*Investment Committee*