UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KATHERINE CUTRONE, et al.,

        Plaintiffs,

    v.

THE ALLSTATE CORPORATION, et al.,

        Defendants.

No. 20 CV 6463

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Katherine Cutrone, Mary Ellen Morgan, Michael W. Smutz, Stan G. Smith, Mary Beth Am Rhein, Valerie Reinecke, and Eddie D. Yousif are current and former Allstate employees who participated in the company's retirement plan. They say plan fiduciaries made and failed to remove imprudent investments, saddled the plan with excessive fees, and caused the plan to make prohibited transactions. Individually and on behalf of the plan and two putative classes of beneficiaries, plaintiffs bring claims for breach of fiduciary duty and prohibited transactions under the Employment Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.*, against Allstate and the committees that managed and administered the plan. Defendants move to dismiss for lack of standing under Rule 12(b)(1), and for failure to state a claim under Rule 12(b)(6). For the reasons that follow, the motion is denied.

## I.    Legal Standards

A complaint must contain a short and plain statement that plausibly suggests a right to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).

A Rule 12(b)(1) motion contests the court's subject-matter jurisdiction. A facial challenge to a plaintiff's standing under Article III asks "whether the allegations, taken as true, support an inference that the elements of standing exist." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). I accept all factual allegations as true and draw all reasonable inferences in plaintiffs' favor, but I disregard legal conclusions or "threadbare recitals" supported by only "conclusory statements." *Iqbal*, 556 U.S. at 678. A plaintiff must provide "more than labels" or "a formulaic recitation of a cause of action's elements," *Twombly*, 550 U.S. at 555, and the complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562.

## II.    Background

### A.    The Plan

Allstate sponsored a defined-contribution retirement savings plan for over 44,000 current and former employees and their beneficiaries. [20] ¶¶ 1, 39–40.[1] The Administrative Committee administered the plan and had discretion to establish and carry out all the rules necessary to operate it and to interpret and apply plan provisions. *Id.* ¶ 26. The plan's Investment Committee selected and monitored the

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. Facts are taken from the consolidated amended complaint, [20].

investment options available to the plan; it had the sole right to choose investment managers and delegate to any investment manager the power and authority to manage plan assets. *Id*. ¶ 25. The plan's 401(k) Committee appointed and monitored members of the Administrative and Investment Committees. *Id*. ¶ 24.[2] According to the complaint, each defendant committee had a role in how the plan was administered and in choosing investments on behalf of the plan. *Id*. ¶ 39.

Under the plan, a participant's retirement account balance primarily depended on the employee's contributions, Allstate's matching contributions, and the performance of investment options after fees and expenses. *Id*. ¶ 40. Because a participant's account grew and compounded over the course of the participant's career, poor investment performance or excessive fees could significantly impair the value of a participant's account over time. *Id*. ¶¶ 40, 151–55.

The Allstate defendants exclusively controlled the selection and retention of investment options for the plan. *Id*. ¶ 40. Participants could choose from several investment options, including a default option: Northern Trust Focus "target date funds." [21-1] at 10, 22.[3] Target date funds are designed to achieve certain investment results based on an investor's anticipated retirement date. [20] ¶ 4. Typically, these funds reduce investment risk over time, allocating the bulk of assets to stock and

---

[2] Plaintiffs refer to Allstate and each committee collectively as the "Allstate defendants" throughout the complaint.

[3] Defendants attach the Summary Plan Description and the underlying plan documents to their motion to dismiss. [21-1], [21-2]. I consider these documents because they are referenced in the complaint, *see* [20] ¶¶ 39–43, and are central to plaintiffs' claims. *See Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009).

equity funds in early years while gradually shifting to more conservative investments (like bonds) as the target date nears. *Id*. ¶ 46. Target date funds have become increasingly popular retirement-savings options, and retirement plans can choose from hundreds of different target date funds. *Id*. ¶ 5.

The Allstate plan offered eleven different Northern Trust target date funds, ranging from 2010 to 2060 and separated by five-year increments (*e.g.*, a 2010 fund, a 2015 fund, a 2020 fund, and so on). *Id*. ¶ 45; [21-1] at 22–23. The year in the fund's name—the target date—was the year a participant was expected to retire. *See* [21-1] at 22. The Allstate defendants retained these funds as a suite, meaning the plan retained the Northern Trust funds as a whole and could not pick and choose among different funds within the suite. [20] ¶¶ 4, 52. For example, the plan could not choose to offer the 2035 and 2045 funds while rejecting the 2040 and 2050 funds—it had to retain all of them. Unless a participant elected otherwise, contributions were wholly invested the Northern Trust fund corresponding with the participant's anticipated retirement date. *Id*. ¶ 51; [21-1] at 10. The Northern Trust funds were the only target date options on the plan, and at the end of 2019, plan participants had invested over $700 million across the eleven offered funds. [20] ¶¶ 42, 50.

Plan fiduciaries also hired two outside advisers—Financial Engines and Alight Financial Advisors—to provide investment advice directly to plan participants through a "professional management" program and an "online advice" program. [20] ¶¶ 12, 125. The professional management program charged an asset-based fee to assume discretionary authority over a plan participant's account after the participant

opted in, while the online advice program charged a flat fee to all participants for the ability to access investment advice in the plan's portal. *Id*. ¶ 125. Financial Engines ran these programs from 2014 until 2017; known as a "robo advisor," Financial Engines used an algorithm to pick a participant's investment portfolio rather than relying on the human evaluation of each portfolio. *Id*. ¶¶ 126, 128. The result: largely standardized (rather than customized) portfolios for each participant, typically without human interaction between an advisor and a participant. *Id*. ¶ 129.

Alight replaced Financial Engines in 2017, but it hired Financial Engines to provide sub-advisory services and relied exclusively on Financial Engines's software to provide investment advisory services. *Id*. ¶¶ 126–27. The switch from Financial Engines to Alight did not change the processes or methodology used to provide investment advice to plan participants. *Id*. ¶ 127. Alight charged participants on a tiered-fee schedule for the professional management program (.45% for the first $100,000 in a participant's account, .30% for the next $150,000, and .25% for amounts above $250,000). *Id*. ¶ 133. Financial Engines charged higher fees. *Id*. ¶ 134. So, the more money in a participant's account, the more money Financial Engines and Alight made, even though no additional costs or services had been rendered. *Id*. ¶ 136. From 2015 to 2019, plan participants paid Financial Engines and later Alight anywhere between $1,265,509 and $2,667,972 in annual advisory fees. *Id*. ¶ 131.

### B.  Plaintiffs' Allegations

#### 1.  *Northern Trust Focus Funds*

Five plaintiffs claim that they invested in six poorly performing Northern Trust funds. Cutrone invested in the 2040 fund; Morgan invested in the 2015 and 2020 funds; Am Rhein invested in the 2025 fund; Smutz invested in the 2035 fund; and Smith invested in the 2025 fund. *Id.* ¶¶ 16–20. Plaintiffs assert that the defendants' process for selecting the Northern Trust funds was deficient. *Id.* ¶ 53. Despite a market full of better-performing alternatives, plaintiffs say, Allstate and its committees chose the suite of Northern Trust funds for the plan in 2011, when the Northern Trust funds had a thin (and poor) investment track record. *Id.* ¶¶ 6, 44, 53. According to the complaint, a prudent fiduciary that compared the untested Northern Trust funds with more established investment options available on the market would have known that multiple better performing options were available. *Id.* ¶ 54.

Northern Trust funds performed worse than 70 to 90 percent of comparable funds, but the Allstate defendants failed to remove the suite as the plan's default retirement investment option. *Id.* ¶¶ 7–8, 59–60. From 2011 to 2021, the Northern Trust funds underperformed compared to benchmark indexes and like target date funds, costing the plan millions. *Id.* ¶¶ 6–7, 44–45, 55–57. The funds consistently underperformed compared to broad-based indexes, including the Morgan Stanley All Country World Investable Market Index, an all-equity index that Allstate identifies as the benchmark. *Id.* ¶ 57. From 2011 through 2021, each Northern Trust target fund consistently underperformed comparable target date funds. *Id.* ¶¶ 58–62, 65–

6

124. In all, as of the filing of the amended complaint, plan participants lost over $70 million in retirement savings since 2014 because of the Allstate defendants' decision to select and retain the suite of Northern Trust funds. *Id.* ¶¶ 8, 10, 63. Plaintiffs claim that their alleged harms stem from the deficient process Allstate used to select and retain the entire suite of Northern Trust funds. *Id.* ¶ 64.

### 2. *Financial Engines's and Alight's Fees*

Plaintiffs also say Allstate allowed Financial Engines and Alight to charge unreasonable investment advisory fees to the proposed class. *Id.* ¶ 132. Specifically, the complaint alleges that plaintiffs Am Rhein, Reinecke, and Yousif suffered harm because of the plan's excessive fees, including fees each paid to Financial Engines and Alight. *Id.* ¶¶ 20–22. Plaintiffs also allege that the Allstate defendants allowed Financial Engines and Alight to receive fees from all participants for the online advice program, regardless of whether participants used the service. *Id.* ¶ 181.

Plaintiffs allege that Financial Engines's robo-advisory services had minimal costs and did almost nothing to earn the alleged fees. *Id.* ¶ 135. The complaint asserts that the same is true for Alight, because it simply contracted with Financial Engines to provide "sub-advisory" services to plan participants. *Id.* Plaintiffs also claim that the fees were unreasonable because, while Financial Engines's and Alight's advisory costs were fixed regardless of the amount of a participant's assets, both charged participants an asset-based fee rather than a flat fee. *Id.* ¶ 136. And because Financial Engines's and Alight's costs were not affected by account size, plaintiffs say, the asset-based fees had no reasonable relation to the services rendered and

resulted in the plan overpaying for investment advisory services. *Id*. The fees were also greater than those charged by comparable target date funds and robo-advisors. *Id*. ¶¶ 137–38, 148. The online advice program charged additional fees and expenses to the plan, regardless of whether participants used the program. *Id*. ¶¶ 140–41. Plaintiffs claim that the Allstate defendants caused participants to pay unreasonable advisory fees to Financial Engines and Alight by failing to monitor the quality and utility of the investment advisory services. *Id*. ¶¶ 147–49.

Plaintiffs also say the Allstate defendants constructed a plan with far too many layers of fees, and for participants who signed up for Financial Engines (and later, Alight), the total fees were so high it was difficult to break even on their investments. *Id*. ¶¶ 13, 142, 150. Further, defendants turned a blind eye to a pay-to-play kickback scheme between Financial Engines and the plan's recordkeeper, in which Financial Engines passed a large percentage of its fees to the plan's recordkeeper, and in exchange, the recordkeeper exclusively featured and promoted Financial Engines to its clients. *Id*. ¶¶ 13, 143–45.

Plaintiffs seek relief on behalf of the plan and two putative classes of participants: (1) those who invested in one or more Northern Trust fund from October 30, 2014 through the date of judgment; and (2) those who paid fees for Financial Engines's or Alight's investment advisory services from January 4, 2015 through the date of judgment. *Id*. ¶¶ 15, 157.

### C.    ERISA: Relevant Provisions

Rooted in the common law of trusts, ERISA imposes "strict standards" of fiduciary conduct. *See Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 570 (1985). A person is a fiduciary if they exercise discretionary authority or control with respect to (1) management of the plan, (2) management or disposition of plan assets, or (3) administration of the plan. *See* 29 U.S.C. § 1002(21)(A). Such persons must act prudently in managing the plan's assets. *See id.* § 1104(a)(1). Specifically, fiduciaries must discharge their responsibilities "with the care, skill, prudence, and diligence" that a prudent person "acting in a like capacity and familiar with such matters" would use. *Id.* § 1104(a)(1)(B). The duty of prudence "involves a continuing duty to monitor investments and remove imprudent ones" within a reasonable time. *Tibble v. Edison Int'l*, 575 U.S. 523, 530 (2015). ERISA also bars plan fiduciaries from causing the plan to engage in transactions with any party in interest. 29 U.S.C. § 1106(a). A party in interest includes "any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of such employee benefit plan," and "a person providing services" to a plan. *Id.* § 1002(14)(A), (B).

ERISA authorizes suits to recover plan losses from fiduciary breaches. *Id.* § 1132(a)(2). Participants also may sue under § 1132(a)(3) to enjoin violations of ERISA or to obtain "other appropriate equitable relief" to enforce, or redress violations of, a fiduciary's obligations. *Id.* § 1132(a)(3). Fiduciaries who breach their duties are personally liable to make good to the plan any losses resulting from each

9

breach. *Id*. § 1109(a). ERISA also includes co-fiduciary liability for fiduciaries that knowingly participate in, enable, or fail to remedy the breach of another fiduciary. *Id*. § 1105. Plaintiffs claim that defendants violated their fiduciary and co-fiduciary duties under 29 U.S.C. §§ 1104, 1105, and 1106. [20] ¶¶ 164–201.

Plaintiffs bring claims under ERISA for breach of the duty of prudence regarding the Northern Trust investments and the unreasonable advisory fees (Counts I & II), prohibited transactions based on the advisory fees (Count III), and breach of co-fiduciary duty (Count IV). Plaintiffs also bring a claim against the Allstate defendants for failure to monitor individuals to whom they delegated fiduciary responsibilities (Count V). Defendants move to dismiss for lack of standing and failure to state a claim.

## III.  Analysis

### A.  Article III Standing

Federal courts may resolve only "cases" or "controversies." U.S. Const. Art. III, § 2, cl. 1. Standing doctrine is "rooted in the traditional understanding of a case or controversy … to ensure that federal courts do not exceed their authority" under Article III. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). In short, standing ensures that the plaintiff has a "personal stake" in the case. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). If the plaintiff has no real skin in the game, there's no Article III case or controversy, and federal courts lack jurisdiction. To establish standing, a plaintiff must allege facts demonstrating "(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent,

(2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1244 (7th Cir. 2021) (quoting *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020)); *see also Spokeo*, 136 S. Ct. at 1547.

All plaintiffs have sufficiently alleged Article III standing. Plaintiffs claim that they lost retirement savings because defendants breached their fiduciary duties, either by selecting and retaining the suite of Northern Trust funds or by causing the plan to pay excessive fees. ERISA makes fiduciaries personally liable for breaches of their fiduciary duties, *see* 29 U.S.C. § 1109, and authorizes recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account. *See id.* § 1132(a)(2); *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008). Plaintiffs have alleged that defendants caused a concrete and particularized injury for which the law provides redress. Article III requires no more.

In fact, defendants do not contend that any plaintiff lacks Article III standing. Instead, they argue that plaintiffs lack Article III standing to "bring claims related to the six [Northern Trust funds] in which they did not invest" because "[p]laintiffs cannot plead facts establishing injury" as to those funds. [21] at 15–16. In other words, plaintiffs have standing to bring their Count I claims, but only as to the funds in which they invested. *See* [37] at 7 ("Count I should be dismissed with respect to the 2010, 2015, 2020, 2030, 2040, 2045, 2050, 2055 and 2060 [Northern Trust funds]."). Some courts have held that ERISA plaintiffs lack Article III standing to bring claims regarding funds in which they did not personally invest. *See Patterson v. Morgan*

11

*Stanley*, No. 16-CV-6568, 2019 WL 4934834, at *4–7 (S.D.N.Y. Oct. 7, 2019); *Wilcox v. Georgetown Univ.*, No. CV 18-422, 2019 WL 132281, at *9–10 (D.D.C. Jan. 8, 2019). One case, *Brown-Davis v. Walgreen Co.*, No. 1:19-CV-05392, 2020 WL 8921399 (N.D. Ill. Mar. 16, 2020), mirrors the facts of this case. Like plaintiffs here, the *Brown-Davis* plaintiffs sued retirement-plan fiduciaries on behalf of a putative class for imprudent investments in ten underperforming Northern Trust target date funds. *Id*. at *1. The court held that plaintiffs lacked standing to bring their claim with respect to two funds in which they did not personally invest because plaintiffs suffered no individualized harm as to those funds. *Id*. at *3.

In my view, Article III does not provide a basis to edit the details of a fiduciary-breach claim when each plaintiff has sufficiently alleged standing as to that claim. The standing inquiry is about whether a plaintiff brings a real dispute to court. Defendants do not contest that plaintiffs have done so. Once that threshold is crossed, the proper scope of plaintiffs' claims become a matter for the merits, not whether there's a case or controversy. Plaintiffs allege breaches of duty that harmed them, and that opens the courthouse door. This is not a case involving alleged misconduct in the sale of a product that a plaintiff did not buy; in those cases, there is no injury unless the plaintiff bought the product, because the only concrete harm was in the transaction for the product. Here, that the breaches of duty may have impaired the value of other funds does not mean that the plaintiffs have no stake in the duty breach—they do, because they were allegedly harmed by the same breach. And where the alleged conduct involved the selection of the full suite of Northern Trust funds

and plaintiffs allege a concrete injury from that selection, there is no jurisdictional problem in having a court resolve the controversy over all of the funds' losses.

Moreover, while ERISA's "cause of action does not affect the Article III standing analysis," *Thole*, 140 S. Ct. at 1620, ERISA provides participants and beneficiaries a right of action to recover losses resulting from fiduciary breaches on behalf of the plan. *See* 29 U.S.C. § 1132(a)(2). Section 1132(a)(2) authorizes "recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *LaRue*, 552 U.S. at 256. And because each plaintiff here has alleged Article III standing, they may seek relief on behalf of the plan or other participants, even when relief sweeps beyond their own injury. *See Peters v. Aetna Inc.*, 2 F.4th 199, 221 (4th Cir. 2021); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998).

Plaintiffs have alleged that defendants' fiduciary breaches caused the value of plan assets in their individual accounts to diminish. They have a personal stake in the litigation and a cause of action to seek recovery for the plan. Of course, just because plaintiffs have standing does not mean that they are proper class representatives. But whether plaintiffs are appropriate class representatives is a question for another day.

Finally, defendants contend that only Yousif has standing to bring Counts II and III. The complaint alleges that Am Rhein, Reinecke, and Yousif used Financial Engines's and Alight's services, but does not specifically allege that any other plaintiff

13

did so. [20] at ¶¶ 16–22. Defendants argue that Rhein and Reinecke lack standing as former participants and that the fees each plaintiff allegedly paid for the online advice program are irrelevant because that part of Count II should be dismissed on other grounds. As addressed in more detail below, however, former participants may bring claims for benefits to which they are entitled under ERISA and Rule 12(b)(6) does not provide a means to excise portions of a claim.

For Article III standing purposes, moreover, it does not matter whether the merits of Counts II and III hold any water. What matters is whether the plaintiffs sufficiently allege that they paid excessive fees, thereby diminishing their retirement accounts, due to the defendants' imprudence and unlawful transactions. They have. Specifically, plaintiffs' allege that the Allstate defendants failed to engage in a prudent process for retaining Financial Engines and Alight as investment advisors, and that on top of being imprudent, the excessive advisory fees paid to these entities constituted prohibited transactions between the plan and a party in interest under 29 U.S.C. § 1106. *See id.* ¶¶ 176–93. The complaint alleges that all plaintiffs paid fees with respect to the online advisory program, and that the Allstate defendants breached their fiduciary duties by "failing to consider the utilization of the online investment advice services in relation to the per-participant cost for such services." *Id.* ¶ 181–82. Plaintiffs have standing to bring Counts II and III.

## B. Exhaustion

On the merits, defendants argue that the complaint should be dismissed because plaintiffs failed to plead that they exhausted administrative remedies before

filing suit. While ERISA's text contains no such requirement, a "strong federal policy encouraging private resolution of ERISA-related disputes mandates the application of the exhaustion doctrine to statutory claims for breach of a fiduciary duty under ERISA." *Powell v. A.T. & T. Commc'ns, Inc.*, 938 F.2d 823, 825 (7th Cir. 1991). At the same time, "the decision to require exhaustion as a prerequisite to bringing suit is a matter within the sound discretion of the trial court." *See Orr v. Assurant Emp. Benefits*, 786 F.3d 596, 601–02 (7th Cir. 2015) (citing *Kross v. Western Electric Co., Inc.*, 701 F.2d 1238, 1244 (7th Cir. 1983)). Generally, a plaintiff's failure to exhaust administrative remedies will be excused when exhaustion would be futile, the remedy provided is inadequate, or when there is a lack of access to meaningful review procedures. *See Orr*, 786 F.3d at 602 (citations omitted).

The plan includes an exhaustion requirement. A plan participant "may submit his claim for benefits, including any claim for breach of fiduciary duty or other violation of the Plan or ERISA … to the Administrative Committee." [21-2] at 74. But "[a] Claimant shall have no right to seek review of a denial of benefits, or to bring any action in any court to enforce a Claim, prior to his filing a Claim with the Administrative Committee (or its designee) and exhausting his rights to review in accordance with this subsection." *Id*. Because plaintiffs did not plead that they exhausted administrative remedies or that any exception applied, defendants argue that I must dismiss the complaint.

I disagree. The question of administrative exhaustion (and whether any exceptions apply) requires factual development. Dismissal at this stage might be

warranted had plaintiffs acknowledged that they could have exhausted remedies but chose not to. *See Zhou v. Guardian Life Ins. Co. of Am.*, 295 F.3d 677, 680 (7th Cir. 2002) (district court did not abuse discretion in dismissing ERISA complaint when plaintiff admitted that he did not exhaust his administrative remedies); *Bingham v. CNA Fin. Corp.*, No. 04 C 2581, 2004 WL 2390093, at *1 (N.D. Ill. Oct. 25, 2004) ("Regardless, we need not consider any of CNA's supplemental materials to determine whether plaintiff exhausted her administrative remedies, because she admits that she did not."); *Talamine v. Unum Life Ins. Co. of Am.*, 803 F.Supp. 198, 201 (N.D. Ill. 1992) (dismissal warranted when plaintiff conceded administrative review of claim remained in progress). But plaintiffs have not conceded that they failed to exhaust, and they contend that exhaustion would've been futile. *See* [30] at 10–12.

Defendants also rely on *Vanderwiel v. Schawk USA, Inc.*, No. 12 C 4178, 2012 WL 4932658 (N.D. Ill. Oct. 16, 2012). The court there ruled that it "must dismiss the [ERISA] complaint for failure to exhaust administrative remedies," because the plaintiff failed to include "any allegations regarding the required administrative procedures." *Id.* at *2. Despite the mandatory phrasing, neither *Vanderwiel* nor defendants provide binding authority supporting the proposition that a court must dismiss an ERISA complaint for failure to plead exhaustion. There is no heightened pleading requirement in ERISA cases, and courts regularly resolve the exhaustion issue at summary judgment. *See, e.g., Orr*, 786 F.3d at 600–02; *Schorsch v. Reliance Standard Life Ins. Co.*, 693 F.3d 734, 739–42 (7th Cir. 2012); *Powell*, 938 F.2d at 827.

That's the proper course here. Application of the exhaustion requirement is within a district court's discretion. *See Orr*, 786 F.3d at 601–02; *Dale v. Chicago Trib. Co.*, 797 F.2d 458, 466 (7th Cir. 1986) ("The application of the administrative exhaustion requirement in an ERISA case is committed to the sound discretion of the district court."). Although the plan requires exhaustion, whether plaintiffs did or could have done so is not an issue susceptible to resolution on a Rule 12(b)(6) motion.

## C.    Collective Pleading

Defendants next contend that the complaint should be dismissed for engaging in impermissible collective pleading. They argue that plaintiffs make almost no allegations specific to each individual defendant and instead refer to the defendants as "Allstate defendants" throughout the complaint. *See* [21] at 12–14.

The complaint is not deficient for grouping defendants together in this way. While "[e]ach defendant is entitled to know what he or she did that is asserted to be wrongful," *Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013), plaintiffs may direct their allegations against all of the defendants. *See Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir.2009) (noting that collective pleading is permissible where it is clear that the plaintiff is directing their allegations "at all of the defendants"). Unlike *Knight*, where the complaint alleged merely that "'the defendants looted the corporation'—without any details about who did what," *Knight*, 725 F.3d at 818, the complaint here provides notice as to the what the Allstate defendants did. Plaintiffs allege that "each of the Defendant Committees have a role in how the 401(k) Plan is administered and what investment choices are made in it."

17

[20] ¶ 39. It says all of the Allstate defendants "are responsible for evaluating and monitoring the Plan's investments on an ongoing basis, eliminating imprudent investments, and taking all necessary steps to ensure the Plan's assets are invested prudently." *Id*. ¶ 169. The complaint also says that "[b]y failing to monitor the services provided by Financial Engines and AFA to ensure that the fees Financial Engines and AFA received were reasonable relative to services provided," each Allstate defendant breached their duty of prudence. *Id*. ¶ 182. Finally, the complaint alleges that each Allstate defendant knew of the breaches by the other Allstate defendants "yet failed to make any reasonable effort under the circumstances to remedy the breach." *Id*. ¶ 196.

Plaintiffs have therefore provided sufficient notice of wrongdoing. They plan to prove that each Allstate defendant violated their fiduciary and co-fiduciary duties with respect to the Northern Trust investments, the Financial Engines and the Alight fees, and the prohibited transactions. Although plaintiffs do not allege specifics of the Allstate defendants' decision-making processes with respect to the plan, *see* [20] ¶ 14, "no such precision [is] essential … [and it is] enough to allege facts from which a factfinder could infer that the process was inadequate." *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016). An ERISA plaintiff alleging breach of fiduciary duty "does not need to plead details to which she has no access, as long as the facts alleged tell a plausible story." *Id*.

Defendants further contend that plan documents establish that the 401(k) Committee and the Administrative Committee were not fiduciaries with respect to

the conduct alleged in the complaint. The plan states that the "401(k) Committee shall be the named fiduciary under ERISA solely for purposes of entering into the trust agreement under [another subsection] of the Plan and for appointing members of the Administrative Committee and the Investment Committee." [21-2] at 13. And the Administrative Committee "shall be the named fiduciary under ERISA with respect to the administration of the Plan." *Id.* at 69. It also sets forth a number of "discretionary powers, rights and duties" of the Administrative Committee. *Id.* at 69–70. Defendants say none of these include selecting or monitoring investments or hiring advisory-service providers. *See* [21] at 13.

In determining whether a person can be held liable for breach of fiduciary duty, the court must "ask whether that person is a fiduciary with respect to the particular activity at issue." *Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 854 (7th Cir. 1997) (citation omitted). A fiduciary "is not a fiduciary for every purpose but only to the extent that he performs one of the described functions." *Klosterman v. W. Gen. Mgmt., Inc.*, 32 F.3d 1119, 1122 (7th Cir. 1994) (citing *Johnson v. Georgia–Pacific Corp.*, 19 F.3d 1184, 1187 (7th Cir. 1994). But the Administrative Committee's duty to administer the plan does not necessarily exclude its involvement in the conduct plaintiffs allege. Its discretionary powers, rights, and duties are not exclusive of other powers. The text of the plan, on its own, does not foreclose plaintiffs' allegations against either committee. Discovery may reveal that neither committee had a role in the decisionmaking process at the center of plaintiffs' allegations, but the complaint tells a plausible story implicating each committee.

19

### D. Former Members

Defendants argue that Cutrone, Morgan, Am Rhein, and Reinecke lack "statutory standing" because they are former plan participants. Defendants say that, because these plaintiffs have already cashed out, their suits are for damages (which ERISA does not authorize) rather than vested benefits (which it does).

A "participant" under ERISA "include[s] former employees who have cashed out their plan benefits, as the named plaintiffs in this case did, if they 'may become eligible to receive a benefit of any type from the plan.'" *Harzewski v. Guidant Corp.*, 489 F.3d 799, 804 (7th Cir. 2007) (quoting 29 U.S.C. § 1002(7)); *see also LaRue*, 552 U.S. at 256 n.6 ("A plan 'participant,' as defined by … 29 U.S.C. § 1002(7), may include a former employee with a colorable claim for benefits.") (citing *Harzewski*, 489 F.3d at 804)). In a defined-contribution plan, when a fiduciary's breach results in a lower cash payout than the participant should have received, the "former employee [is] eligible to receive a benefit, [and] can maintain the suit under [29 U.S.C. § 1132(a)]." *Harzewski*, 489 F.3d at 804. In other words, "[t]he benefit in a defined-contribution pension plan is … just whatever is in the retirement account when the employee retires or *whatever would have been there had the plan honored the employee's entitlement*, which includes an entitlement to prudent management." *Id.* at 804–05.

Defendants argue that *Harzewski* is confined to circumstances in which plaintiffs cashed out their benefits after filing suit but before filing an amended complaint. Not so. The court expressly noted the immateriality of this distinction. *See id.* at 803 ("That [plaintiffs] cashed out after the complaint was filed, and before the

20

amended complaint was filed, is immaterial. The parties' preoccupation with those filing dates is a product of the confusing use of the word 'standing' to denote both a right to invoke the aid of the courts and a right to obtain a particular form of judicial relief."). And defendants do not identify any contrary binding authority. The former participants' claims are for benefits, not damages.

### E. Online Advice and Recordkeeper Transactions

Finally, defendants say plaintiffs have failed to state a claim regarding the online advice program and the alleged kickback scheme between Financial Engines and the plan's recordkeeper. Count II, based on excessive plan fees, involves two advisory services—the professional management program and the online advice program—and defendants say that the allegations regarding the online advisory program are too vague and conclusory to state a claim. [21] at 14. Defendants also contend that the portion of Count III that is based on the alleged kickback scheme fails to state a claim, because once the plan paid Financial Engines, those funds were no longer assets of the plan. *See id.* at 15 (citing *Divane v. Nw. Univ.*, 953 F.3d 980, 992 (7th Cir. 2020)). Defendants therefore ask that I dismiss only these portions of Counts II and III. *See* [21] at 14 ("This portion of Count II cannot stand."); *id.* at 15 ("[T]he portion of Plaintiffs' prohibited transactions claim based on the payment from Financial Engines to [Alight] must be dismissed.").

Rule 12(b)(6) "doesn't permit piecemeal dismissal of *parts* of claims." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 587 (7th Cir. 2021) (quoting *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015)). Instead, the question is "simply whether the

21

complaint includes factual allegations that state a plausible claim for relief." *BBL*, 809 F.3d at 325 (citing *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014)). Here, defendants do not contest that plaintiffs have stated a claim with regard to the professional management program in Count II, nor do they contest that plaintiffs have stated a prohibited-transactions claim with respect to the allegations that defendants caused the plan to hire and pay unreasonable compensation to Financial Engines and Alight. [20] ¶¶ 188–90. So even if the complaint offers no specifics about how the online advice program fees were excessive and even if the fees Financial Engines paid to the recordkeeper were not plan assets, the complaint states claims for relief under 29 U.S.C. §§ 1106 and 1109(a).

Defendants' arguments at most point to immaterial allegations that do not violate ERISA. But Rule 12(b)(6) is not a blue pencil used to mark up a complaint. Summary judgment, on the other hand, is different. Rule 56 explicitly allows for partial summary judgment and requires parties to "identif[y] each claim or defense— or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Defendants may raise these arguments at summary judgment.[4]

---

[4] And discovery management will prevent plaintiffs from pursuing burdensome discovery on untenable issues.

## IV.    Conclusion

Defendants' motion to dismiss, [21], is denied. Defendants shall answer the consolidated complaint by October 19, 2021. The parties shall file a status report with a proposed discovery schedule by October 26, 2021.

ENTER:

_____
Manish S. Shah
United States District Judge

Date:  September 28, 2021